No. 22,781.

THE STATE OF KANSAS, ex rel. WILLIAM H. BURNETT, as County Attorney of Reno County, *Plaintiff*, v. PETER DECK et al., as THE BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, et al., *Defendants*.

#### SYLLABUS BY THE COURT.

RECALL OF PUBLIC OFFICIALS—*Constitutional Provision Not Self-Executing—No One Authorized to Call a Recall Election*. The constitutional amendment of 1914, providing for the recall of public officials by special elections (Kan. Const., Art. 4, §§ 3-5, Gen. Stat. 1915, §§ 192-194), is not altogether self-executing but needs supplementary legislation to render it effective, as hitherto no general authority has been granted by statute to any official to call special elections, and none of the many miscellaneous statutes for calling special elections, which vest such power in specific instances in the governor, or the boards of county commissioners, or other public officials, can be construed to fit the constitutional provision which speaks of "the authority for calling elections in the state or other electoral division."

Original proceeding in mandamus. Opinion filed March 6, 1920. Writ denied.

*William H. Burnett*, county attorney, for the plaintiff.

*Carr W. Taylor, John H. Connaughton, A. C. Malloy, F. Dumont Smith*, and *Walter F. Jones*, all of Hutchinson, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: This action invokes the original jurisdiction of this court. The state asks a writ of mandamus to compel the board of county commissioners of Reno county, and the county clerk, and sheriff, or any or all of them, to call an election for the proposed recall of a county officer of that county, under the provisions of the constitutional amendment adopted in 1914. (Kan. Const., Art. 4, §§ 3, 4 and 5; Gen. Stat. 1915, §§ 192, 193 and 194.)

The state's petition alleges, in substance, that Peter Deck was elected county commissioner in the third commissioner district in Reno county at the general election in 1916, and that thereafter he qualified and entered upon his official duties. On

The State, *ex rel.*, v. Deck.

December 26, 1919, a petition for his recall, signed by 472 persons, was filed with the county clerk. It reads:

"PETITION FOR THE RECALL OF PETER DECK, COUNTY COMMISSIONER OF THE THIRD COMMISSIONER DISTRICT, RENO COUNTY, KANSAS.

"The undersigned, and more than twenty-five per cent of electors of the third commissioner district of Reno County, Kansas, and qualified to sign a petition for the recall of Peter Deck, who was elected as County Commissioner for the said third district at the general election held on the 7th day of November, 1916, do hereby certify that we and each of us as signers of this petition are citizens of the United States of America, electors of the said Third Commissioner District of Reno County, Kansas, and that we voted for Peter Deck for County Commissioner at the said general election on November 7, 1916, and we do respectfully petition the proper authorities, with whom this petition shall be filed for calling elections in the said third commissioner district of Reno County, Kansas, that an election for the recall of Peter Deck as County Commissioner be duly called within thirty days after the filing of this petition and be proclaimed at least sixty days before the date of holding thereof as provided by Section 4 of Article 4 of the Constitution of the State of Kansas. The said petitioners state that the reasons for the recall of the said Peter Deck as County Commissioner of Reno County, are as follows, to-wit:

"1. That when Peter Deck was a candidate for said office he announced and pledged himself to said electors as being opposed to the construction of hard surfaced roads.

"2. After he qualified and while holding said office, the said Peter Deck stated that he was opposed to the construction of hard surfaced roads, and that he would vote against the proposition pending before the board of county commissioners for the letting of contracts for the construction of such roads, but notwithstanding that he was supported, requested and petitioned by approximately 900 of his constituents to vote against letting contracts, he did vote for and did let contracts for building hard surfaced roads at extortionate and inexcusable prices for materials against the will of a large majority of his constituents; that as an excuse for his action, he falsely accused the opponents of hard roads of threatening him with personal violence."          (Signed by J. I. RAMSEY and 471 others.)

The state further alleges that the signatures are genuine; and that in 1916, Deck received a total of 1,721 votes; that on January 3, 1920, demand was made upon the defendants and each of them to call the election in the third commissioner district on the proposition of the recall of Peter Deck, but that each and all of the defendants have declined and refused to do so.

Other matters covered by plaintiff's petition may be disregarded.

The defendants make separate answers to the alternative writ.

The sheriff says he is advised that he has no official duties to perform in connection with a recall election until such election has been called by the board of county commissioners, "if they have authority so to do," but that he is willing to perform any duties in and about said election imposed on him by law.

The county clerk answers that he always has been and still is willing "to publish a notice of any election, general or special, authorized by law."

A majority of the board of county commissioners file a separate answer, which, among other matters, raises the question whether the recall amendment is self-executing or dependent upon legislation to make it effective:

"(*a*) No provision is made in the said amendment for any examination or verification of the pretended signatures to said recall petition, whereby the door is left open to fraud which might impose the indignity and expense of a recall election upon an office holder, and the expense of the election upon the tax-payers without the filing of such petition as is required by the said amendment.

"(*b*) Because the said amendment does not specify to whom the said recall petition shall be presented and who shall have power and authority to call said election. That the Board of County Commissioners of Reno County, Kansas, have no inherent powers to call any election; that the right to call any election is not among the enumerated general powers of said board; that the only authority these defendants have to call any election is derived from some special statutory provision; that no legislation has been enacted to effectuate said constitutional amendment so far as county officers are concerned, whereby the said constitutional amendment is unavailing for the purposes sought by the said recall petition, and by this action; that these defendants have been at all times and now are ready and willing to comply with any duty imposed upon them by a statute and submit themselves to the judgment of the court, but are unwilling to assume the authority to call an election when they are unable to find in the said amendment or in the statutes of the State of Kansas any authority conferred upon them to impose upon the county of Reno the large expense which would be necessary for such an election."

The answer of the board also alleges that the territory and limits of the third commissioner district have been lawfully changed since Deck was elected in 1916, and that he is not now a resident of the territory included within the former boundaries of that district. The board's answer also challenges the authenticity of some of the signatures, and alleges that many

The State, *ex rel.*, v. Deck.

of the petitioners are not resident electors of that district; and that the recitals in the petition for Deck's recall are false, malicious and untrue; and continues with a strong statement tending to vindicate Deck's conduct both as a candidate before the election in 1916 and as a public officer since that time.

One member of the board of county commissioners, among other matters, answered—

"1. That he was of the opinion that under the law said board of county commissioners had nothing whatever to do with the advertising and calling of an election for the recall of Peter Deck, county commissioner from the Third Commissioner District of Reno County, Kansas."

Let us pass at once to the main question—whether the constitutional provision is self-executing or dependent on further legislation to carry it into effect—for unless the problem there presented can be satisfactorily solved it will be useless to consider other details raised by the pleadings. A self-executing provision of the constitution is simply a provision which needs no supplementary legislation to make it effective. (*State, ex rel., v. Lynch,* 88 Ohio St. 71, 48 L. R. A., n. s., 720.) The recall amendment of the constitution, adopted in November, 1914, reads:

"SEC. 3. Every public officer holding either by election or appointment is subject to recall from office by a majority of the electors of the state or lesser electoral division for which elected or appointed, voting on the subject at any general or special election, but the provisions hereof shall not be deemed exclusive of other remedies for removal from office.

"SEC. 4. An election for recall shall be upon petitions signed by at least ten (10%) per cent of the electors of the state, qualified to sign, for the recall of any state officer; by fifteen (15%) per cent of the electors for the recall of an officer elected by a district less than a state and greater than a county; or, for an officer who was appointed by him; and by twenty-five (25%) per cent of the electors qualified to sign, for the recall of an officer elected in a county, district or municipality within the county, or an officer who was appointed by any such officer elected. Any petition for recall shall certify that the signers thereof are citizens of the United States of America and voted for the officer to be recalled, if elected; or, for the officer who appointed him if appointed, at the last preceding election at which such officer was elected. The petition shall be filed with the authority for calling elections in the state or other electoral division, at least ninety days before the date of election, and the election held thereon shall be called within thirty days after filing petition, and be proclaimed at least sixty days before the date of holding. The petition and proclamation of election shall state in not more than two hundred words the reasons for the recall.

"SEC 5. The recall ballot shall be, Shall the named officer holding the named office be recalled, and the provisions of law for holding, canvassing and certifying returns of general elections shall apply to recall elections, and if the vote be in favor of the recall a vacancy in the office shall exist, to be filled as authorized by law." (Kan. Const., Art 4, §§ 3, 4 and 5; Gen. Stat. 1915, §§ 192, 193, and 194.)

The first section of this amendment is a grant of power from the people authorizing the recall of their public servants. The third section directs how the question of the recall shall be propounded, and directs that the general law relating to elections shall govern the holding, canvassing and certifying of the returns of recall elections.

Certain self-executing details of the amendment are found in the second section. Those details prescribe what sort of a recall petition shall be prepared, what percentages of electors must sign it to make it effective, what the qualifications of the signers must be, what recitals the petition must contain, and—

"The petition shall be filed with the authority for calling elections in the state or other electoral division, . . . and the election . . . shall be called . . . and be proclaimed," etc.

It will be noted, however, that the amendment assumes that there is authority vested in some official to call such an election. It assumes that such authority has already been created under existing statutes. The general elections provided for by the constitution are not altogether self-executory. The constitution is self-executory so far as fixing the time for holding them. (Kan. Const., Art. 4, § 2; Gen. Stat. 1915, § 191.) But elaborate statutes are enacted to supplement the constitutional provision governing the regular biennial elections. The statutes furnish the machinery for the general election. As to special elections, the constitution is silent, and they are governed by many different statutes which deal with many different affairs. The governor is the authority to call special elections for particular purposes, the filling of a vacancy in our congressional representation (U. S. Const. Art. 1, § 2), also in the state senate, and in the lower branch of the state legislature (Gen. Stat. 1915, § 4358). The board of county commissioners is authorized to call special elections on various propositions, but each specific instance is under a special grant of statutory power, viz.: Special elections to borrow money, General Statutes of 1915, section 2551; for bridges, id., secs. 623-626;

for aid to county fairs, Laws of 1917, chapter 190, section 1; for high-school bonds, Laws of 1917, chapter 282, section 2; for rural high-school districts, Laws of 1917, chapter 284, section 2; for bridge building, Laws of 1919, chapter 98, section 4; for county hospitals, Laws of 1919, chapter 158, section 1; for county high-school buildings and sites, Laws of 1919, chapter 268, section 2; for establishing county high schools, General Statutes of 1915, section 9288. These instances may not exhaust the list, but in each of such special elections, positive, complete and specific authority is granted to the board of county commissioners. Where such authority is not expressly conferred it would not exist. County superintendents have power to call special school-district elections in some cases (Gen. Stat. 1915, § 8892.) Special school elections may sometimes be called by the district school board (Gen. Stat. 1915, § 8907), and sometimes by the clerk of that board (Id., § 8909). There is much specific legislative authority conferred on mayors of cities to call special city elections, and also to call such elections at the behest of boards of education. (Laws 1917, ch. 268, and ch. 283, and Laws 1919, ch. 262; *The State, ex rel., v. Bentley,* 98 Kan. 442, 157 Pac. 1197.)

But this research of the statutes does not disclose a grant of general power in any public official to order the holding of special elections. Where next shall we look? Will the statute conferring general powers upon the board of county commissioners fill the requirement? That statute reads, in part—

"The board of county commissioners of each county shall have the power . . . *Fifth,* To represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law." (Gen. Stat. 1915, § 2549.)

We hesitate to say that this statutory language indicates with any clarity that the board is the official body contemplated by the constitution where it provides that the recall petition "shall be filed with the authority for calling elections" in an "other electoral division" than the state; nor can we say that this statutory language was what the legislature had in mind when it drafted the constitutional amendment, or what the people had in mind when they adopted it. There is always a judicial disposition to find an interpretation for a statute, and more especially for a constitutional provision, which will make

it work, which will give effect to the legislative will, or to the people's decree. But this disposition, this inclination, must not tempt us to read into a statute or constitution something that is not there, either clearly or by fair interpretation. To go beyond that is to leave the legitimate field of judicial interpretation and to usurp the legislative prerogative by judicial legislation—a practice repellant to every righteous judge, every upright lawyer, and to every high-minded citizen.

It seems needless to discuss the possibility that authority to call elections, either general or special, is vested in the sheriff or county clerk. In most respects, the sheriff is the chief executive officer of the county, but all his powers (except those of a common-law conservator of the peace), are derived from specific legislation. He has no general power to call an election, except in obedience to a writ issued by the governor (Gen. Stat. 1915, § 4358). Neither has the county clerk. His powers are exclusively those which are conferred upon him by law. It is his duty to issue a notice of any election which is called by operation of law or by lawful authority (Laws 1917, ch. 178, § 1, amending Gen. Stat. 1915, § 4138), but he has no statutory function to determine the question whether a special election should be called, or when it should be called.

There seems to be a hiatus in our statutes—a want of a clear, unquestioned authority to call special elections, except in such instances as we have outlined above, none of which is pertinent here. This is a matter which the legislature can easily remedy. It can designate the governor, as it has done in the case of vacancies in the state legislature; it can designate the county clerk, seeing that he has so much to do with the election machinery; it can designate the board of county commissioners, as it has done in so many specific instances above cited. It may provide an election commissioner and vest such authority in him. But the legislature must do the designating; it must name "the authority for calling elections" for the recall of public officials. In that detail the constitutional amendment is not self-executory, and must await supplementary legislation to give it potency so far as the recall of a county commissioner is concerned.

In *Woodworth v. Bowles*, 61 Kan. 569, 574, 60 Pac. 331, Mr. Chief Justice Doster, speaking for the court, said:

"As a rule, constitutional provisions, unless expressed in negative form or possessed of a negative meaning, are not self-assertive. They usually assume the form of a command to the legislature, and legislative action becomes necessary to give them effect. . . . When the constitution declares that a right shall be secure or a thing shall be done, it means that it shall be secured, or shall be done, by the legislature. In such case, the constitution places upon the legislature the obligation to carry out its ordinances by appropriate enactment."

### In 6 Ruling Case Law, at page 61, it is said:

"In adopting constitutions the people frequently leave to the legislature the enactment of statutes as to detailed matters, in order to make the provisions fully operative. . . . Where constitutional provisions wholly omit the detailed provisions needed to make them effective, the rule is established that they will not be considered as self-executing. As illustrations may be mentioned constitutional commands directed to the legislature to pass suitable laws providing for religious instruction in schools, and to establish election machinery for enacting legislation by the initiative and referendum. It has likewise been held that a constitutional mandate is not self-executing which provides that property should be uniformly taxed, but that it is otherwise as to a provision that the general assembly should levy a capitation tax equal to the tax on property valued at a designated amount. Among other illustrations of mandatory constitutional provisions which are not self-executing may be mentioned those that direct that the fitness of persons to be appointed to public office shall be ascertained as far as practicable by competitive civil service examinations. Such provisions are merely announcements of a general principle clearly requiring legislation for its enforcement."

(See, also, *State v. Harris,* 74 Ore. 573, Ann. Cas. 1916 A, 1156; Cooley's Constitutional Limitations, 7th ed. 119-123; 12 C. J. 727, 730; 8 Cyc. 752, 758, *et seq.*; Note, 16 L. R. A. 281.)

It follows that the other questions raised in the answers of some of the defendants need no consideration. The writ is denied.