No. 46,799

The State of Kansas, ex rel., Vern Miller, Attorney General of Kansas; the State Board of Education of Kansas, et al., *Appellant,* v. Board of Education of Unified School District No. 398, Marion County (Peabody) Kansas, *Appellee.*

(511 P. 2d 705)

Opinion filed June 26, 1973.

*Erle W. Francis,* assistant attorney general, argued the cause, and *Vern Miller,* attorney general, and *John Johnson,* assistant attorney general, were with him on the brief for the appellant.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause, and was on the brief for the appellee.

*Ward D. Martin,* of the firm of Crane, Martin, Claussen & Hamilton, of Topeka, was on the brief *amicus curiae.*

The opinion of the court was delivered by

FONTRON, J.: The issue to be decided in this appeal is whether a regulation adopted by the State Board of Education relating to school conduct is or is not valid. The trial court held the regulation to be void, and its ruling has been appealed.

On a date not shown by the record, the board promulgated K. A. R. 91-15-1, to become effective January 1, 1971. The rule reads as follows:

"The boards of education of every unified school district and boards of control of every area vocational-technical school in Kansas shall adopt rules which: (*a*) Govern the conduct of all persons employed by or attending such institutions, and (*b*) provide specific procedures for their enforcement.

"Each governing body shall submit such rules to its legal counsel for review to assure compliance with city ordinances, statutory and constitutional requirements.

"After the adoption of such rules, copies thereof and the approval of the board's legal counsel shall be filed with the state commissioner of education no later than *March 31, 1970;* and in subsequent years any amendments thereof with legal counsel's approval shall be filed with said commissioner immediately after adoption."

The Board of Education of Unified School District No. 398, Marion County (Peabody), Kansas, took issue with the State Board

of Education contending that it lacked authority to enact or enforce such a regulation and that the same was void, and without force or effect. Hence, this lawsuit for a declaratory judgment was filed by the State of Kansas in conjunction with the State Board of Education.

We shall refer to the State of Kansas as the state or plaintiff, to the State Board of Education as the state board, and to the Board of Education of Unified School District No. 398, Marion County (Peabody), Kansas, as the district board or defendant.

The state board contends that K. A. R. 91-15-1 is a proper exercise of its power of general supervision granted both by constitutional and statutory provisions. Resolution of this contention will require consideration of pertinent constitutional and statutory provisions. Before that task is undertaken, it may not be out of place to observe that, apparently, certain philosophical differences exist between the state board and district boards of education with respect to the proper relationship between the state and the public schools, particularly as to the powers, duties and functions appertaining to the state board on the one hand and local school boards on the other. We shall attempt to delineate their respective positions as we proceed with this opinion.

Article 6 of the Kansas Constitution relates to the field of education. In the Wyandotte Constitution adopted July 29, 1859, provision was made for a superintendent of public instruction. The duties of this constitutional officer were broadly outlined in § 1 of article 6 as follows:

"The State Superintendent of Public Instruction shall have the general supervision of the common school funds and educational interests of the State, and perform such other duties as may be prescribed by law. . . ."

It will be noted that the state superintendent was not endowed by this section of the constitution with general supervision of the public schools.

The constitutional provisions relating to education remained stable and unchanged for many years and it was not until the constitution was amended by vote of the people, November 8, 1966, that the superintendent of public instruction was phased out of public life and the state board of education made its appearance. Since the 1966 amendment went into effect, article 6 contains the following provision pertinent to the present lawsuit:

"§ 2. (a) The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and

all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law.

"(*b*) The legislature shall provide for a state board of regents and for its control and supervision of public institutions of higher education. Public institutions of higher education shall include universites and colleges granting baccalaureate or post-baccalaureate degrees and such other institutions and educational interests as may be provided by law. The state board of regents shall perform such other duties as may be prescribed by law.

"(*c*) Any municipal university shall be operated, supervised and controlled as provided by law.

. . . . . . . . . . . . . . .

"§ 5. Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards. When authorized by law, such boards may make and carry out agreements for cooperative operation and administration of educational programs under the general supervision of the state board of education, but such agreements shall be subject to limitation, change or termination by the legislature."

There can be little doubt that the 1966 amendment made significant changes in the area of public schools and educational institutions. A greater sense of obligation on the part of the state to participate in the support of public schools and in the general field of public education seems to be implicit in the language of article 6, § 1:

"The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law."

As we understand the general educational pattern contemplated by the 1966 amendment, the state board of education shall have general supervision over the public schools and educational interests of the state except functions delegated by law to the board of regents; the state board of regents is to exercise control and supervision over public institutions of higher education, as provided for by the legislature; municipal universities are to be operated, controlled and supervised as provided by the legislature; and local public schools are to be maintained, developed and operated by locally elected boards of education under supervision of the state board of education.

In *Brickell v. Board of Education,* 211 Kan. 905, 508 P. 2d 996, we recognized the constitutional mandate relating to the state board of education in these words:

". . . [T]he adoption in 1966 of the amendment to Article 6 of the Kansas Constitution bestowed broad supervisory powers in the State Board of Education. . . ." (p. 917).

The state board has taken the position in this case that the provisions of article 6, § 2 (*a*) are self-executing so far as its power of general supervision is concerned and that, in addition, it is authorized by statute to exercise supervisory powers over local public schools. The district board takes a quite contrary view and insists that the regulation encroaches upon the authority granted local boards by § 5 of article 6 of the constitution.

At the trial level, the defendant district board prevailed. The trial court held (1) that § 2 of article 6 was not self-executing and (2) the state board had no statutory authority to issue the regulation in question.

We turn to the point first raised by the plaintiff: Is article 6, § 2 (*a*) self-executing as it concerns the exercise of general supervision over the public schools, educational institutions and educational interests of the state except, of course, as to functions delegated to the state board of regents? Our answer is that in the restricted sense of exercising general supervision, article 6, § 2 (*a*) is self-executing. In other words it is our view that the state board may exercise its constitutional power of supervision without ancillary legislation and that its authority in that limited respect could not be thwarted by legislative failure to adopt supplementary legislation.

In *State, ex rel., v. Deck,* 106 Kan. 518, 521, 188 Pac. 238, this court defined a self-executing constitutional provision as "simply a provision which needs no supplementary legislation to make it effective." This terse definition accords with that found in legal encyclopedias. In 16 C. J. S., Constitutional Law, § 48, p. 143, the rule is expressed this way:

"A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated in order to render it operative, . . . constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. . . ."

Similar language is found in 16 Am. Jur. 2d, Constitutional Law, § 94, p. 280:

"A constitutional provision is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the legislature to put it in operation. . . ."

A constitutional provision may be self-executing in part and not self-executing in another part. (16 Am. Jur. 2d, Constitutional Law, supra.) This principle was recognized in *State, ex rel., v. Deck,*

supra, where this court observed that various self-executing provisions were to be found in certain parts of the constitutional provision being considered. We believe the rule is applicable here; § 2 (*a*) is self-executing in part, but not in its entirety; for instance, it is the legislature which must provide for the establishment of the state board of education in the first place and which must delegate to the board "such *other* duties as may be provided by law." (Emphasis supplied.)

Intention has an important bearing when it comes to determining whether a constitutional provision is, or is not, self-executing. The role which intention plays in ascertaining if a provision of the constitution is self-executing in nature is well expressed in 16 C. J. S., Constitutional Law, § 48, pp. 146, 147, in this way:

"Whether or not a provision is self-executing depends on whether the language is addressed to the courts or to the legislature,—whether it indicates that it is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it into effect; and this requires a consideration both of the language used and of the intrinsic nature of the provision itself. The question is always one of intention and, in order to determine the intent, the general rule is that courts will consider the language used, the objects to be accomplished by the provision, and the surrounding circumstances. . . ."

In measuring the thrust of § 2 (*a*) by the yardstick of intention, we note the distinction between the power granted to the board of education and that allocated to the board of regents. We assume the difference in treatment accorded the two boards was carefully thought out and was meant to have meaning. Section 2 (*a*) reads that the legislature *shall provide* for a state board of education *which shall have general supervision* over the public schools *except functions delegated to the board of regents.* The language embraced in § 2 (*b*) is quite different. This section states that the legislature *shall provide* for a state board of regents *and for its control and supervision* of public institutions of higher learning. We view the differences as significant. In our opinion § 2 (*a*) contemplates, overall, that the supervisory powers of the state board of education should be self-executing, once the legislature has established that board, while the control and supervision accorded to the board of regents under § 2 (*b*) would require legislative implementation.

We are aware of *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331, and *State, ex rel., v. Deck,* supra, both of which the defendant has cited in opposition to the state's contention. Even though this court

determined in those two cases that the respective constitutional provisions under examination were not self-executing, we do not consider those decisions as being of controlling impact here. Without going into detail, we believe it sufficient to say that in neither case was the constitutional provision similar in character or kind to the one before us now.

In arguing that § 2, article 6, is not self-executing, the defendant calls attention to K. S. A. 72-7503 (c). The statute reads:

"The state board of education shall have the powers that it is specified to have in the constitution as such powers are more specifically described and defined by law."

With respect to this statute the defendant says in its brief: "Nothing could be more clear than this declaration by the legislature that the 'general supervisory' powers of the state board of education found in Section 2 of Article 6 in the Kansas constitution are not self-executing and were meant to be implemented by statute."

We do not place the same interpretation on the statute. The general rule, as we understand it to be, is that even when a constitutional provision is self-executing the legislature may enact legislation to facilitate or assist in its operation, but that whatever legislation is adopted must be in harmony with the provisions of the constitution.

A good many years ago an Oklahoma court speaking on this subject in *Nowakowski v. State*, 6 Ok. Cr. 123, 116 Pac. 351, stated:

"It is not every self-executing provision of a Constitution which exhausts legislative power upon the subject with which it deals. There are many such where legislation in aid of or in addition to the provision is both permissible and desirable. Certainly the Legislature can enact nothing in derogation of the constitutional provision; but unless such provision, in addition to being self-executing, is also a limitation upon the power of the Legislature, it may enact laws in aid of and in addition to the provision and extending its terms. . . ." (p. 129.)

Later cases express a similar view. Speaking in *Roberts v. Spray*, 71 Ariz. 60, 223 P. 2d 808, the Arizona court said:

". . . The fact that a constitutional provision is self-executing does not necessarily exhaust legislative power on the subject but such legislation must be in harmony with the spirit of the constitution. . . ." (p. 69.)

In a California case, *People v. Western Air Lines, Inc.*, 42 C. 2d 621; 268 P. 2d 723, the Supreme Court of that state expressed itself in these words:

"Although a constitutional provision may be self-executing the Legislature

may enact legislation to facilitate the exercise of the powers directly granted by the Constitution. . . ." (p. 637.)

(See, also, 16 Am. Jur. 2d, Constitutional Law, § 95, p. 280; *Gherna v. State*, 16 Ariz. 344, 146 Pac. 494.)

We do not see K. S. A. 72-7503 (*c*) as an attempt to detract from the constitutional grant of power, but rather as a declaration of legislative intent to facilitate *in futuro*, the board's exercise of supervisory powers. In any event the legislature could not thwart a self-executing provision of the constitution and we will not infer that such was its intention.

In our opinion the statutes of this state, as well as the constitution, endow the state board with authority to supervise the public schools and to adopt regulations for that purpose.

It will pay us to look at a few of those statutes. K. S. A. 72-7514 provides:

"The state board is hereby authorized to adopt rules and regulations not in conflict with law on any and all matters within its jurisdiction, except as is otherwise specifically provided by law."

### K. S. A. 72-7513 reads as follows:

"In general, *but not by way of limitation*, consonant with other applicable statutory provisions, the state board of education shall:

"(*a*) Adopt and maintain standards, criteria, guidelines or rules and regulations for the following:

"(1) School libraries and textbooks and other educational materials;

"(2) Courses of study and curriculum;

"(3) Accredit schools including elementary, secondary and junior colleges, public and nonpublic;

"(4) Certification of administrators, teachers, counselors and supervisors of school districts and of the state department of education and of teachers and administrators of nonpublic schools;

"(5) Have general supervision of school nurses.

"(*b*) Administer the laws of this state concerning the matters named in this section and all other matters *relating to the general supervision of the public schools and institutions under supervision of the state board of education*." (Emphasis supplied.)

### K. S. A. 72-8205 provides in pertinent part as follows:

". . . Except as otherwise provided in the unification acts the [unified district] board [of education] shall have and may exercise the same powers and authorities as were immediately prior to this act conferred uniformly upon boards of education in cities of the first class, and, in addition thereto, the powers and authority expressly conferred by law. The [unified district] board [of education] shall have authority to prescribe courses of study for each year of the school program and provide rules and regulations for teaching in the unified district and general government thereof, and to approve and adopt suit-

able textbooks and study material for use therein *subject to the plans, methods, rules and regulations formulated and recommended by the state board of education. . . .*" (Emphasis supplied.)

K. S. A. 72-1623, provides in material part:

"The board [of education in cities of first and second class] shall establish and maintain a system of free public schools for all children residing in the city school district and may make all necessary rules and regulations for the government and conduct of such schools, *consistent with the laws of the state.* . . ." (Emphasis supplied.)

Construing the provisions of K. S. A. 72-8205 and 72-1623 in conjunction with each other the district board insists it has sole authority to make all necessary rules and regulations for the government and conduct of the public schools within its district. The board overlooks that part of 72-8205 which is italicized above relating to state board recommendations, as well as the clause italicized in 72-1623: "consistent with the laws of the state." Both K. S. A. 72-8205 and 72-1623 were enacted prior to adoption of the 1966 amendment. The laws relating to schools and school matters have undergone significant change since 1966, and state supervision has come into the picture. The rules and regulations adopted by district boards must be consistent with present laws, including those which now provide for supervision by the state board of education.

It appears that the present statutory pattern, quite aside from constitutional provisions, is one of entrusting the operation of local public schools to local boards of education subject to the general supervision of the state board of education, such supervision being restricted, however, by the limitations which inhere in the nature of supervision.

We see no flaw in the statutory pattern by reason of the legislature having listed in 72-7513 (*a*) five general areas in which the state board should adopt and maintain standards, criteria, guidelines, or rules and regulations. The statute makes it clear that the enumeration is "not by way of limitation." Legislative intent is made even plainer in this respect by subsection (*b*) which provides that the state board shall administer the laws concerning the matters named *and all other matters relating to the general supervision of the public schools.*

The question remains: Did the state board exceed the scope of its general supervisory authority in adopting K. A. R. 91-15-1? We find little legal authority to assist us in determining what is comprised within the term "supervision." In common parlance we sup-

pose the term would mean to oversee, to direct, to inspect the performance of, to superintend. (See Webster's International Dictionary, Third Edition; American Heritage Dictionary.) It is difficult to be exact as to the legal meaning of the term, for much depends on the context in which it is set out.

In *Continental Casualty Company v. Borthwick*, 177 So. 2d 687, 689 (Fla. App.), the court stated;

"A reference to recognized lexicographies reveals that the word 'supervision' is capable of definition—that is, by the use of general, comprehensive words. For example, in Webster's Collegiate Dictionary, the definition of supervision is two-fold: namely, as 'Act of supervising' and as 'The direction and critical evaluation of instruction, esp. in public schools.'"

In *Commonwealth of Pennsylvania v. Brown*, 260 F. Supp. 323, 348, the federal court speaks of supervision as importing regulation.

Perhaps the case most helpful in getting at the problem is *Great Northern R. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924, where the Washington Supreme Court said:

"What is meant by *general supervision?* Counsel for respondents contend that it means, to confer with, to advise, and that the board acts in an advisory capacity only. We cannot believe that the legislature went through the idle formality of creating a board thus impotent. Defining the term 'general supervision' in *Vantongeren v. Heffernan*, 5 Dak. 180, 38 N. W. 52, the court said:

"'The secretary of the interior, and, under his direction, the commissioner of the general land office has a general "supervision over all public business relating to the public lands." What is meant by "supervision?" Webster says supervision means 'To oversee for direction; to superintend; to inspect; as to supervise the press for correction.' And, used in its general and accepted meaning, the secretary has the power to oversee all the acts of the local officers for their direction; or as illustrated by Mr. Webster, he has the power to supervise their acts for the purpose of correcting the same; and the same power is exercised by the commissioner under the secretary of the interior. It is clear, then, that a fair construction of the statute gives the secretary of the interior, and, under his direction, the commissioner of the general land office the power to review all the acts of the local officers, and to correct, or direct a correction of, any errors committed by them. Any less power than this would make the "supervision" an idle act,—a mere overlooking without power of correction or suggestion.'

"Defining the like term in *State v. Fremont etc. R. Co.*, 22 Neb. 313, 35 N. W. 118, the court said:

"'Webster defines the word "supervision" to be "The act of overseeing; inspection; superintendence." The board therefore, is clothed with the power of overseeing, inspecting and superintending the railways within the state, for the purpose of carrying into effect the provisions of this act, and they are clothed with the power to prevent unjust discriminations against either persons or places.'

"It seems to us that the term 'general supervision' is correctly defined in these cases. . . ." (pp. 484, 485.)

Considering the frame of reference in which the term appears both in the constitution and the statutes, we believe "supervision" means something more than to advise but something less than to control. The board of regents has such *control* over institutions of higher learning as the legislature shall ordain, but not so the board of education over public schools; its authority is to *supervise*. While the line of demarcation lies somewhere between advice and control, we cannot draw the line with fine precision at this point; we merely conclude that the regulation which is the bone of contention between the state and district boards in this case falls within the supervisory power of the state board of education.

As forcefully pointed out in the brief of *amicus*, the regulation makes no attempt to prescribe what the rules of conduct shall be or what procedures are to be adopted for enforcing compliance with the rules adopted. As is stated in the brief, "The content of such rules and regulations was left entirely to the discretion of the local board."

Conditions existing on many campuses during recent years have illustrated only too well the needs for rules of conduct within educational systems, as well as procedures to insure compliance therewith. The rules of conduct and procedures which are adopted must not offend against public laws or violate constitutional rights. To insure that codes comply with local, state and federal laws it is not unreasonable to require they be submitted to legal counsel before being filed with the state board.

Grave fear is voiced by the defendant that the regulation in question is but the forerunner of efforts by the state board to encroach upon the constitutional powers entrusted to local boards by article 6, § 5, and that eventually public boards of education will be be reduced to adopting budgets dictated by the state board, paying bills and handing out diplomas.

We will not impute future bad faith to the state board of education. There is room enough for every person, every group, every public agency interested in the education of our young people to have a significant and meaningful role in this vital area of national concern.

The people of this state, by constitutional fiat, have placed the maintenance, development and operation of local public schools with locally elected school boards, subject to the general super-

vision of the state board of education. Local boards of education as well as the state board of education, will have sufficient duties to perform and will find plenty of authority to exercise without getting into each other's hair or without encroaching upon each other's domain. The need to educate our young persons is far too urgent a priority for the members of either state or local boards to permit relations between them to deteriorate and become abrasive.

The judgment of the lower court is reversed.

FROMME, J., dissenting. The majority have quietly and effectively removed any vestige of authority from local school boards. The constitutional provision (Art. 6, Sec. 5) which states that local public schools "shall be maintained, developed and operated by locally elected boards" is now emasculated. This emasculation is accomplished by the court by the simple declaration contained in Syllabus ¶ 6 making Art. 6, Sec. 2 (a) self-executing and by the further holding that "general supervision" of public schools by the state board includes the right to require local school boards to adopt rules to govern the conduct of teachers, students and employees. Heretofore these have been considered matters to be left to the local school board or to the legislature. This is no longer true.

The constitutional provision which directs the legislature to provide for a state board of education with general supervision over public schools is not, in my opinion, a self-executing provision for the intention expressed therein contemplates subsequent legislation to give it effect.

The state of Kansas serves an area containing both urban centers and rural areas. The background and needs of the students and teachers in our individual local schools are varied. The problems arising in the areas of internal control and operation of these educational facilities are best solved by local school boards. The rule with which this court is presently concerned was promulgated by the state board of education and on the surface the rule is innocuous, but it does pertain to matters of local control and operation. The rule, with this court's present decision, has become the vehicle for placing control of local schools in the hands of the state board. When we approve the state board's rule making authority in this case the board is assured of the power to control local schools. The local school board in the present case was directed by the state board to adopt rules of conduct for its teach-

ers, students and employees. It was further directed to provide specific procedures for enforcing the rules and to have legal counsel approve the same. When this is accomplished these rules are required to be filed with the state board.

Once "general supervision" by the state board, as mentioned in the constitution, is recognized by this court to include areas pertaining to local management and operation the camel has his head in the tent. The local board's authority to operate its schools will slowly but surely be crowded into a corner by the state board. The local board's right of control then becomes permissive, dependent upon how far the state board desires to enter the area of local control. If the state board can require promulgation of rules of local concern, they can require such to be uniform in this state. If such rules are to be made uniform in this state the state board will have to dictate their contents and will do so.

The legislature has already launched itself into the area of general supervision of public schools. As mentioned in the majority opinion the legislature in K. S. A. 72-7513 has authorized the state board of education to adopt guidelines or rules in certain defined areas of "general supervision". These areas include libraries, text books, courses of study, accreditation of schools, certification of teachers, employees and school nurses. All of these areas of general supervision recognized by the legislature are of statewide interest where uniformity directly affects the overall general quality of education in the state. None are related directly to internal matters of local operation. If the state board is not attempting to dictate matters of local conduct, as it now contends, and if it will be satisfied with such rules of conduct as the local boards see fit to adopt under K. A. R. 91-15-1, why then is the state board not satisfied to rely on K. S. A. 72-7513 (b) as authority for adoption of the present rule. The state board does not do so. Instead it argues, and this court accepts the premise, that the constitutional provision under which the state board is created is self-executing in the area of general supervision of the schools. I cannot agree.

Kansas has a few cases discussing self-executing constitutional provisions. In *Higgins v. Cardinal Manufacturing Co.*, 188 Kan. 11, 360 P. 2d 456, the court found the right to work amendment (Art. 15, Sec. 12) to be self-executing. In *Higgins* it was said:

"It is a settled rule of constitutional construction that prohibitive and restrictive constitutional provisions are self-executing and may be enforced by the courts independent of any legislative action, unless it appears from the

language of the provision that the enactment of legislation is a requisite to give it effect. . . ." (p. 18)

In accord, see 16 C. J. S. Constitutional Law, § 49, p. 147. The provision of Art. 6, Sec. 2 (*a*) with which we are presently concerned is not a prohibitive or restrictive constitutional provision and in that sense is not self-executing.

In *State, ex rel., v. Deck,* 106 Kan. 518, 188 Pac. 238, the court discussed self-executing clauses in the context of the recall amendment to the constitution (Art. 4, Sec. 3-5). The general rule is stated as follows: ". . . A self-executing provision of the constitution is simply a provision which needs no supplementary legislation to make it effective. . . ." (106 Kan. at 521.) The court found certain details of the amendment were self-executing but that the provisions for calling a recall election were not, and in that detail it was said the amendment "must await supplementary legislation to give it potency". The case clearly recognizes that a constitutional provision may be partially self-executing and partially not self-executing, but it is not controlling authority in the present case. (To the same effect, see 16 C. J. S., Constitutional Law, § 48, p. 143 and 16 Am. Jur. 2d, Constitutional Law, § 94, p. 280.)

In the course of the *Deck* opinion, the court quoted from 6 Ruling Case Law, at page 61, as follows:

" 'In adopting constitutions the people frequently leave to the legislature the enactment of statutes as to detailed matters, in order to make the provisions fully operative. . . . Where constitutional provisions wholly omit the detailed provisions needed to make them effective, the rule is established that they will not be considered as self-executing. As illustrations may be mentioned constitutional commands directed to the legislature to pass suitable laws providing for religious instruction in schools, and to establish election machinery for enacting legislation by the initiative and referendum. It has likewise been held that a constitutional mandate is not self-executing which provides that property should be uniformly taxed, but that it is otherwise as to a provision that the general assembly should levy a capitation tax equal to the tax on property valued at a designated amount. Among other illustrations of mandatory constitutional provisions which are not self-executing may be mentioned those that direct that the fitness of persons to be appointed to public office shall be ascertained as far as practicable by competitive civil service examinations. Such provisions are merely announcements of a general principle clearly requiring legislation for its enforcement.' " (p. 525)

Sections 1, 2 (*a*) and 2 (*b*) of Article 6 are all prefaced by the statement, "The legislature shall provide for" and each section clearly requires legislation for enforcement.

In *State, ex rel., v. Highwood Service, Inc.,* 205 Kan. 821, 473 P. 2d 97, in discussing the constitutional ban against lotteries, (Art. 15, Sec. 3) this court recognized that while a constitutional provision ". . . may be self-executing, it is not self-defining. That function is judicial in nature, . . ." (205 Kan. at 825) (See also *State v. Nelson,* 210 Kan. 439, 502 P. 2d 841.) Thus if the provision is self-executing the definition of this somewhat ambiguous term, general supervision, is left to this court.

Perhaps the most interesting Kansas case for present purposes is *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331. That case deals with the provision of Art. 12, Sec. 2 which states that "Dues from corporations *shall be* secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law; . . ." (Emphasis supplied.)

The court in *Woodworth* recognized that if the provision was held to be self-executing, the legislature might adopt procedures to grant a remedy to creditors, but if those legislative procedures were inadequate or conflicting with the constitutional provision, the latter would control. In *Woodworth* it was said:

". . . If the legislative enactments are not up to the requirements of the constitution, and if the constitution be self-operative to the ends sought to be reached, this court must carry out the mandate of the organic instrument. . . . Although the legislature might rightfully devise a mode of procedure adapted to the end in view, yet, in the lack of such legislative enactment, the constitution, through its self-operative force, would seize upon and appropriate to its purposes such general forms of action as had been already provided for similar cases, . . ." (61 Kan. 573)

Thus, in the present case, if Art. 6, Sec. 2 is self-operative so as to give the state board general supervision of the public schools, then, while the legislature may act, any legislation must be in harmony with that power of supervision and may not detract from that power or limit it in any way. (See also 16 Am. Jur. 2d, Constitutional Law, § 95, p. 280.)

The *Woodworth* court found the provision was not self-executing, and deemed it only a direction to the legislature. The court said:

". . . As a rule, constitutional provisions, unless expressed in negative form or possessed of a negative meaning, are not self-assertive. They usually assume the form of a command to the legislature, and legislative action becomes necessary to give them effect. The one under consideration is an instance of the latter kind. The constitution does not ordain in terms of the present tense the individual liability of stockholders for the debts of corpora-

tions, but it ordains it in terms of the future tense. It declares that 'dues from corporations *shall be secured,*' etc., not that 'dues from corporations are secured.' When the constitution declares that a right shall be secured or a thing shall be done, it means that it shall be secured, or shall be done, by the legislature. In such case, the constitution places upon the legislature the obligation to carry out its ordinances by appropriate enactment." (61 Kan. p. 574)

This "present tense—future tense" distinction is relevant to the constitutional provision now under consideration. Art. 6, Sec. 2 provides that "The legislature *shall provide* for a state board of education which *shall have* general supervision of public schools, educational institutions and all the educational interests of the state, . . ." (Emphasis supplied) The amendment does not say *there shall be a state board of education which has general supervision.* Under the reasoning of the *Woodworth* case, by its use of the future tense the clause requires the legislature to provide for the board and further requires that the legislature give to the board general supervision of the public schools. As such, the clause is not self-executing. It leaves to the legislature responsibility for establishing guidelines for the board's exercise of general supervision. That the constitution reserves to the legislature ultimate control of the public schools is made clear from the statement in Art. 6, Sec. 1 that "The legislature shall provide for . . . educational, . . . improvement by establishing and maintaining public schools, . . . which may be organized and changed in such manner as may be provided by law." Under Art. 6, Sec. 6, the legislature has responsibility for financing the state's educational interests. Under Sec. 5, the legislature must sanction and may review certain contracts of local boards, though they are to be operated under the state board's general supervision. The legislature cannot possibly perform these constitutionally mandated duties if the state board of education has a power by virtue of the constitution of general supervision of the public schools independent of legislative guidelines.

The reason for giving general supervisory authority to the state board is apparent. The legislature is functionally unsuited to exercise the day-to-day decision making necessary in the supervision of a statewide system of public schools and for this reason a state board of education is logically needed. However, Art. 6, taken as a whole, clearly vests in the legislature the authority to determine by statute the scope of the state board's general supervision.

In 16 Am. Jur. 2d, Consitutional Law, § 98, p. 283, it is stated:

"Since a constitutional provision which depends upon legislative action for its effectiveness is ipso facto not self-executing, it follows that in determining whether a provision is self-executing, the question in every case is whether the language of a constitutional provision is addressed to the courts or to the legislature. . . ."

In 16 C. J. S., Constitutional Law, § 54 (d), p. 162, it is said:

"A grant of powers to an officer is usually self-executing. . . . A constitutional provision granting the legislature authority to confer specified powers on a commission does not of itself give the commission any powers. . . ."

In the present case the constitutional provision is addressed to the legislature and it pertains to powers of a board or commission. Two things stand out clearly in my mind. First, the authority of the state board of education mentioned in the constitution is limited to general supervision of the public schools and any authority encompassed by such reference is not intended to be self-executing. Second, the term "general supervision of public schools" must now, under the court's present decision, be defined and limited by this court, not by the legislature.

The majority of this court now decide the authority of general supervision includes the authority to require all local school boards to adopt rules of local conduct to govern their students, teachers and employees, to require the adoption of specific procedures for enforcement of such rules and to require approval of said rules by legal counsel. After reading the court's decision, I am unable to determine what authority remains in the hands of the legislature and what self-executing constitutional authority resides in the state board of education. This problem will continue to plague not only this court but the legislature as well.

The legislature had previously set forth in K. S. A. 72-8901, *et seq.*, rules of conduct pertaining to students. Does the legislature now have that authority or does it now reside in the state board of education? The legislature has previously outlined specific procedures for the enforcement of rules governing student conduct and authorizing suspension or expulsion. (K. S. A. 72-8902.) Does the legislature now have that authority or does it now reside in the state board of education?

If the state board has this authority to require the local boards to adopt additional rules of conduct to govern students and to provide specific procedures for their enforcement under its self-executing

constitutional grant it has the ultimate authority in this area. It may be exercised independently of any legislative action.

In *Blaine v. Board of Education*, 210 Kan. 560, 502 P. 2d 693, this court said:

"Article 6, § 5 of the Constitution of the State of Kansas provides that local public schools shall be maintained, developed and operated by locally elected boards.

"In compliance with the Kansas constitutional mandate the legislature has established a system of local public schools which are placed under the supervision of locally elected boards of education.

"The legislature has authorized boards of education to suspend or expel any student guilty of violating published regulations adopted by the board, and has provided a due process hearing for students suspended or expelled. (K. S. A. 1971 Supp. 72-8901 *et seq.*)" (Syl. ¶¶ 1, 2 and 3.)

The thrust of our present decision raises serious doubts as to the efficacy of our holding in *Blaine* and will create grave difficulties for the local boards in the future. By holding that the general supervisory power granted in the constitution is self-executing, and by not being able to define the term precisely, we make it necessary in the future for this court to pass upon the constitutionality of each legislative act and each rule of the state board relating to control and operation of the public schools to determine if they are encompassed in the term "general supervision".

The ink is hardly dry on our opinion in *Brickell v. Board of Education*, 211 Kan. 905, 508 P. 2d 996, where this court said:

"Education is the title of Article 6 of our constitution which specifically delegates responsibility for all aspects of the subject to the legislature. . . ." (p. 913.)

We now have decided the legislature no longer has this full responsibility. *Brickell* hereafter must be read as holding our constitution delegates responsibility to the legislature for all aspects of the subject, except those which this court may hereafer determine to be in the area of general supervision of public schools. This latter area, under the court's present decision, is now reserved exclusively to the state board of education under the newly declared self-executing provisions of our constitution.

The people of this state had no intention of giving up all control of their local schools to the state board of education when they approved the new constitutional article on education. An intention is clearly expressed in the constitution to have the legislators provide the guidelines for general supervision of the schools. In my opinion the constitutional provision is not self-executing and I would affirm the district court's judgment.