Leo W. Lloyd, M.D. President Colorado State Board of Medical Examiners 1525 Sherman Street Room 128 Denver, Colorado 80203
Dear Dr. Lloyd:
I am in receipt of your letter of July 28, 1977 in which you request interpretations of C.R.S. 1973, 12-36-106(3)(1) which requires responsible direction and supervision by a person licensed to practice medicine when a non-licensed person is rendering services. I render this opinion not to provide advice to physicians and hospitals who are utilizing non-licensed personnel but instead to provide guidance to the Board so that it may carry out its statutory responsibility to police this situation.
C.R.S. 1973, 12-36-106(3) states in relevant part:
 Nothing in this section shall be construed to prohibit, or to require a license under this article with respect to any of the following acts:
. . . .
 (1) The rendering of services under the personal and responsible direction and supervision of a person licensed under the laws of this state to practice medicine, but nothing in this exemption shall be deemed to extend the scope of any license, and this exemption shall not apply to persons otherwise qualified to practice medicine but not licensed to so practice in this state.
Further, C.R.S. 1973, 12-36-106(4) provides:
 All licentiates designated or referred to in subsection (3) of this section, who are licensed to practice a limited field of healing arts, shall confine themselves strictly to the field for which they are licensed and to the scope of their respective licenses, and shall not use any title, word, or abbreviation mentioned in paragraph (d) of subsection (1) of this section, except to the extent and under the conditions expressly permitted by law under which they are licensed.
QUESTIONS PRESENTED AND CONCLUSIONS
Two issues arise over the meaning of the above statutory language. Those issues will be addressed in the order of presentation.
1. May persons who are otherwise licensed in a limited field of the healing arts perform functions which would be outside the scope of their limited licenses but for the fact they were practicing them under the personal and responsible direction and supervision of a physician.
 My conclusion is that persons licensed in a limited field of the healing arts may perform functions which are outside the scope of their licenses if they are functioning under the personal and responsible direction and supervision of a physician.
2. What is the meaning of "personal and responsible direction and supervision?"
 With respect to the meaning of "personal and responsible direction and supervision," the statute has never been interpreted by the Colorado Supreme Court, and thus other sources have been referred to for guidance.
ANALYSIS
Regarding question #1, the apparent ambiguity arises if, for example, a person licensed in a limited field of healing arts is nonetheless rendering services, which would otherwise be beyond the scope of his or her license, but doing so under the personal and responsible direction and supervision of a licensed physician pursuant to paragraph (1) above. The language in paragraph (1) "nothing in this exemption shall be deemed to extend the scope of any license" could be construed to mean that such person who is licensed in a limited field of healing arts, even though rendering services under paragraph (1), would be unable to provide any services not specifically authorized under his or her license. Moreover, the language of subsection (4) appears to confirm that result. However, this interpretation leads to the ludicrous result that a person who has no training or license in a limited field of healing arts could render any
services pursuant to paragraph (1) provided that they were performed under the personal and responsible direction and supervision of a licensed physician; whereas a person who is licensed and qualified in a limited field of healing arts could not.
The clear intent of paragraph (1) is to provide the ability to persons who are not educated and trained to the extent of doctors to perform services so long as the services are performed under the personal and responsible direction and supervision of a licensed physician. The direction and supervision portion of paragraph (1) assures that the physician has the ultimate responsibility for the rendering of the services as well as the direct responsibility to supervise that person in the performance of the services. In order to avoid the ludicrous result mentioned above, the language "nothing in the exemption shall be deemed to extend the scope of any license," as well as the similar language in subsection (4), must be read as merely a reaffirmation of the fact that services performed under this paragraph (1) must be done under the direction and supervision of a physician. In other words, a person who is otherwise in a limited field of healing arts, cannot extend the scope of that license through the sham or subterfuge of a blanket authority to perform services not otherwise within the scope of that license by a physician. However, when there is "personal and responsible direction and supervision" by a physician, that person may render services which he or she may not be able to do without that supervision under his own license. This construction does resolve the above-mentioned apparent inconsistency between paragraph (1) and subsection (4) and thus complies with the rule of statutory construction requiring that various sections within the same article be so construed as to harmonize, one with the other. See Board of Co. Com. v.Rippy, 161 Colo. 261, 421 P.2d 461 (1966).
Regarding question #2, "Personal" has been defined as limited to the person and appertaining to the person (See Black's LawDictionary, 3rd Ed., p. 1356). Thus, in order to be within the statutory exemption, the direction and supervision must be rendered by the person licensed to practice medicine himself, and not through others. The legislative intent appears to be that the licensee himself will apply the licensee's own education, skill and training to the rendering of direction and supervision rather than giving direction and supervision to a third person who in turn will transmit it to the subsidiary worker.
The use of the term "responsible" relates to the legal liability and accountability. The licensee is liable for all acts of the subsidiary worker, both physically and from the standpoint of the professional accountability by way of disciplinary action against the licensee for acts of the subsidiary worker. This is a passive, as opposed to an active element of the exemption, as the law imposes the responsibility without action by the licensee other than the licensee's use of a subsidiary worker. However, the Board may consider requiring some more formal evidence of the relationship between the doctor and the non-licensed subsidiary worker to avoid any later denial on the part of the physician.
"Direction" and "supervision," although sometimes used as synonymous, have been distinguished. "Direction" has been held to concern itself with decision making, whereas "supervision" is the act of overseeing to assure that direction is pursued. Thus, in Rueske Implement Company v. Shipley, Wyoming,445 P.2d 912 (Wyo. ____), the court defined "direction" as "something that is imposed as authoritative instruction." Further, inWay v. Patton, 241 P.2d 895, 900 (Ore. ____), it is defined as a "guiding or authoritative instruction, pre-occupation, order, command." The function of direction is to remove discretion. "Supervision" has been interpreted to mean the act of overseeing, inspection or superintendence. Statev. Freemont, E and MVR, Co., 35 N.W. 118, (Neb. ____). One court noted in State ex rel. Miller v. Board ofEducation, 511 P.2d 705, 712 (Kan. ____) that "the power to inspect, to superintend, to evaluate and oversee means more than to advise but less than to control." However, when "supervision" is coupled with "direction" it would include inspection, evaluation, advice and control.
A further issue presented by the exemption relates to the quantity of supervision and direction: Is constant physical presence of the licensee required? This issue, in turn, appears to revolve about the legislative intent in providing the exemption. Although no legislative history is available, the logical intent of the statute appears to be to free the licensee from the necessity of performing those acts which may be successfully performed by trained, unlicensed personnel, in order to allow the licensee to devote more time to complex services demanding only the skill, judgment and training of a licensee.
With regard to supervision, in Catalano v. Bospt,170 A. 562 (Md. ____), the court noted in interpreting a contract of employment to supervise construction, that the term "supervision" is of broad enough import to require either constant presence during the work supervised or only such devotion thereto as necessary to see that compliance be had with specifications. The more liberal construction appears to be more in tune with the intent of the exemption and thus the more logical with regard to subsidiary worker exemption. Rather than requiring constant on-the-spot supervision, it is my opinion that devotion by the licensee of sufficient time to on-the-spot inspection of the subsidiary worker's skills to determine that the licensee's directions are regularly being followed is all that is required for the "supervision" of the exemption. What constitutes sufficient time for on-the-spot inspection depends upon many factors, including the complexity of the task, the risk to the patient, the background and training of the subsidiary worker, and the skill of the subsidiary worker.
Likewise, it is my opinion that the legislative mandate of direction does not always require the constant on-the-spot presence of the licensee. It does require sufficient personal direction such that all decision making requiring skill, judgment and training of the licensee is removed from the subsidiary worker. Decisions as to necessity, type, effectiveness and method of treatment are within the sole province of the licensee. However, written standing directions and protocols which remove such decision making from the subsidiary worker would, in appropriate instances, appear to fulfill the mandate for direction. The only instance when telephone directions, as opposed to on-the-spot directions or written standing directions and protocols, may be appropriate would be in emergency situations when the physician is not available. Routine or non-emergency situations should be handled by on-the-spot directions or written standing directions and protocols to insure that the decisions as to necessity, type, effectiveness and method of treatment are only made by the physician. What direction may be given by written standing directions and protocols and what may be given only by the on-the-spot presence of the licensee again depends upon many factors, including the complexity of the task, risk to the patient, and skill and training of the subsidiary worker.
SUMMARY
In summary, persons licensed in a limited field of the healing arts may perform functions which are outside the scope of their licenses if they are functioning under the personal and responsible direction and supervision of a physician. "Personal and responsible direction and supervision" includes at least the following:
1. The licensee himself must provide the direction and supervision.
2. The licensee assumes physician and professional accountability for the acts of the subsidiary worker.
3. The licensee makes all decisions as to necessity, type, effectiveness, and method of treatment.
4. The licensee inspects the quality of services rendered by the subsidiary worker for a reasonable period of time frequently enough to assure compliance with the licensee's directions.
Finally, it should be emphasized that the Board has primary jurisdiction for policing and monitoring the physician side of the relationship between the physician and the subsidiary worker within the guidelines presented above. If the Board desires to engage in rule-making to further define the relationship and its perimeters, our office would be happy to provide assistance in that regard.
Very truly yours,
 J.D. MacFARLANE Attorney General
PHYSICIANS AND SURGEONS MEDICAL PRACTITIONERS, LIMITED
C.R.S. 1973, 12-36-106(3)(l) C.R.S. 1973, 12-36-106(4)
REGULATORY AGENCIES, DEPT. Medical Examiners, Bd. of
1. Persons licensed in a limited field of the healing arts may perform functions which are outside the scope of their licenses if they are functioning under the personal and responsible direction and supervision of a physician.
2. This opinion also defines "personal and responsible direction and supervision."