The Honorable Susan Wagle State Representative, Ninety-Ninth District State Capitol, Room 426-S Topeka, Kansas 66612
Dear Representative Wagle:
You request our opinion regarding the authority of the legislature to enact 1993 House Bill No. 2035. That bill attempts to delineate the 501 organizations eligible for the 12% assessment rate authorized in article11, section 1 of the Kansas constitution, and you question whether the legislature can, by statute, limit the organizations entitled to this reduced rate.
To answer this question we must determine whether the constitutional provision is self-executing. The legislature cannot restrict or defeat a self-executing provision of the constitution through legislative enactments. See State, ex rel., Miller v. Board of Education,212 Kan. 482, 488 (1973); Colorado Interstate Gas Co. v. Board of MortonCounty Comm'rs, 247 Kan. 654, 659 (1990), quoting 16 Am.Jur.2d,Constitutional Law sec. 141. On the other hand, constitutional provisions that are not self-executing remain inoperative unless and until implemented by appropriate legislation. Id.
Whether a constitutional provision is or is not self-executing is ultimately a question of intent. Discovering intent requires a consideration of the language used, the objects to be accomplished by the provision, and the circumstances surrounding passage of the provision.State, ex rel., Miller, 212 Kan. at 487; Wyandotte County v. KansasAvenue Properties, 246 Kan. 161, 166 (1990); 16 Am.Jur.2d at sec. 143. The language used in this case is as follows:
 "Class 1 shall consist of real property. Real property shall be further classified into even subclasses. Such property shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:
. . .
 (4) Real property which is owned and operated by a not-for-profit organization not subject to federal income taxation pursuant to section 501 of the federal internal revenue code, and which is included in this subclass by law .............................. 12%" Kan. Const., art. 11, sec. 1(a).
The phrase "and which is included in this subclass by law" indicates that legislation is required to determine which 501 organizations are to be included in subclass (4). Similar language in other constitutional provisions has been found to make those provisions not entirely self-executing. State, ex rel. v. Board of Education, 212 Kan. at 486-487
[article 6, sec. 2(a)]; Attorney General Opinion No. 85-135 (article 11, sec. 12); 16 Am.Jur.2d at sec. 144 ("a provision that a thing shall be done in such a way `as shall be provided by law,' or `as provided by law,' or `in the manner to be prescribed by law,' or a provision that the legislature `shall provide by law,' . . . is not self-executing.")
In construing constitutional provisions, every word must be given due force and appropriate meaning. State ex rel. Donaldson v. Hines,163 Kan. 300 (1947); Colorado Interstate Gas Co. v. Board of MortonCounty Comm'rs, 247 Kan. 654, 660 (1990); Board of Wyandotte CountyComm'rs v. Kansas Ave. Properites, 246 Kan. at 166. "[E]ffect should be given to every part and every word of a constitution and no portion of the fundamental law should be treated as superfluous, unless there is some clear reason to the contrary." 16 Am.Jur.2d, at sec. 101. Thus, some meaning must be attributed to the phrase "and which is included in this subclass by law." If not the meaning set forth above, then what? Could it mean that the legislature may include any real property in this subclass even though it is not owned and operated by a 501 organization? We think not. Not only would such a construction fly in the face of the framer's intent, as evidenced by the circumstances surrounding passage of the provision discussed below, it would appear to lead to an impermissible result. Another rule of constitutional construction is that each provision must be read in light of other provisions and effect be given to each if at all possible. State v. Smith, 155 Kan. 588 (1942). If the phrase in question does not require legislative action to specify the 501 organizations eligible for the 12% rate, then this provision would constitute a delegation of legislative authority to the federal government, allowing the federal government to alter section 501 (thereby altering the entities eligible for the 12% rate) without an accompanying acquiescence by the state either by statute or constitutional amendment. The language specifying particular sections of 501 that were being adopted as of a date certain was deleted from this provision when the phrase "and which is included in this subclass by law" was added. 1991 HCR 5007, as amended by the House Committee on Taxation. See Journal of the House 458. Such a delegation of legislative authority would contravene article 2, section 1 of the constitution leaving all legislative authority with the legislature except that which is lawfully delegated to state governmental entities.
The intent of a provision can also be derived from a consideration of the purposes sought to be accomplished by it and the circumstances surrounding its adoption. Beginning in 1990, the first session after reappraisal and classification took effect, certain fraternal orders began seeking relief from the increased taxes they were experiencing. Since the constitution requires a uniform and equal basis of valuation and rate of taxation except as otherwise specified therein, in order to grant relief the legislature either had to recommend a constitutional amendment or grant a total exemption to these fraternal orders. It chose the former alternative. It was determined that these organizations were generally classified as 501(c)(8) or 501(c)(10) under the internal revenue code. Thus, as introduced by the house committee on taxation, 1991 HCR 5007 stated in part as follows:
 "Class 1 shall consist of real property. Real property shall be further classified into eight subclasses. Such property shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:
. . . .
 "(5) Real property which is owned and operated by a taxpayer which is organized for not-for-profit purposes and is not subject to federal income taxation pursuant to section 501(c)(8) or section 501(c)(10) of the federal internal revenue code as in effect on January 1, 1991 .............................. 15%." 1992 Journal of the House 2657.
The house committee then received testimony from the Topeka Women's Club, a civic organization, that it too was desperate for tax relief but that it did not meet the requirements of 501(c)(8) or 501(c)(10). The Women's Club is a 501(c)(4) organization. Minutes, House Committee on Taxation, February 6, 1992, attachment 1, and Minutes, House Committee on Taxation, February 12, 1992, attachment 12. Subsequently, the house committee amended HCR 5007 to what is now the current version of the provision of article 11, section 1 in question. 1991 Journal of the House 458. There was no recorded discussion of automatically granting all 501 organizations the 12% rate. An explanation of the amendment accompanied each version of the resolution, stating:
 "House Taxation Committee amendments included . . . changing the eligibility for the proposed assessment level for certain not-for-profits from only those organized under 501(c)(8) and 501(c)(10) to only those defined by statute which are organized under any provision of 501(c) and reducing the proposed assessment level from 15 to 12 percent. . . ." Supplemental Note on House Concurrent Resolution No. 5007, as amended by House Committee, House Committee of the Whole; Senate Committee on Assessment and Taxation, and Senate on Final Action.
The explanatory statement accompanying the amendment on the ballot stated in part:
 "Three new subclasses of real property should be established, namely: (1) real property owned and operated by certain not-for-profit organizations the assessment rate for which would be decreased from 30% to 12%,. . . ." L. 1992, ch. 342, sec. 2.
Based on the foregoing, it appears the purpose of the resolution was to allow the legislature to statutorily authorize a reduced assessment rate to certain, but not necessarily all, not-for-profit 501 organizations. The circumstances surrounding adoption of the measure support this conclusion. Never were the voters officially told that a vote for the amendment would automatically entitle all 501 organizations to a 12% assessment rate, and the language of the provision cannot be construed in this way.
In conclusion, the 1992 amendment to article 11, section 1 of the Kansas constitution allowing use of a lower assessment rate for real property owned and operated by not-for-profit organizations that are not subject to federal income taxes pursuant to section 501 of the internal revenue code is not self-executing. The legislature must define by legislation the types of 501 organizations eligible for the lower rate. We note that this opinion does not address the issue of equal protection, as that question was not asked.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm