No. 46,782

STEVE BLAINE, a minor, by and through his father and next friend, Don Blaine; and KENNY LUGINBILL, a minor, by and through his guardian, Hazel Sloan, and JAMES VAUGHN, a minor, by and through his mother and next friend, Rose Vaughn, *Appellants,* v. BOARD OF EDUCATION HAYSVILLE UNIFIED SCHOOL DISTRICT No. 261 SEDGWICK COUNTY, HAYSVILLE, KANSAS, *Appellee.*

(502 P. 2d 693)

Opinion filed November 4, 1972.

*James P. Johnston,* of Sowers, Sowers, Carson and Johnston, of Wichita, argued the cause and was on the brief for the appellants.

*James R. Schmitt,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The Board of Education of Haysville Unified School District No. 261, Sedgwick County, Kansas, expelled three students from attending Campus High School until such time as compliance with a hair length regulation was demonstrated. The students, appellants herein, refused to comply and they exhausted those administrative remedies which have been provided by the legislature for suspensions or expulsions. (See K. S. A. 1971 Supp. 72-8901 *et seq.*) No question is raised concerning the sufficiency of the administrative proceedings afforded these students under the statute. The expulsions were based upon willful violations of school regulations relating to the length of the hair of male students.

The three students filed the present action in the district court seeking to have that part of the school dress code relating to the hair length of male students declared unconstitutional. The trial court denied the relief sought and found from the evidence that the regulation was reasonable and motivated by legitimate school concerns. This appeal followed.

The question posed on appeal is whether a board of education may adopt and enforce by suspension and expulsion a school regulation which relates to the appearance and length of the hair of male students.

Is such a school regulation constitutionally permissible?

We turn to the facts surrounding the adoption of the dress code and the expulsion of these students.

A dress code has existed at Campus High School for many years. The high school is operated by the Board of Education of Haysville Unified School District. As early as 1962, the code restricted the

wearing of "extreme hair styles" by male students. For several years preceding the expulsions in this case controversy existed in the Haysville schools concerning a dress code which included the regulation of hair styles. During the summer of 1971, after seeking the advice of legal counsel as to an existing dress code, the school board directed the superintendent of schools to formulate a representative committee of students, parents, teachers and administrators of the district to make specific recommendations to the board concerning a dress code. A committee of twenty was formed. There were five (5) members who were parents of children in school. These were selected by the superintendent from different areas of the school district. Three (3) teachers served on the committee. Five (5) high school students were on the committee. They were members of the Campus High School student council who had previously been elected at large by the student body as their representatives in student government. Three (3) junior high students participated. In addition to the president and vice-president of the junior high school student council, one student was selected at large by the principal. To complete the committee three (3) school administrators and one (1) school board member were selected to serve. A dress code, which included the present male student hair regulation, was formulated and unanimously recommended to the board. This code was adopted by the Board of Education without change on September 27, 1971.

The dress code as recommended and adopted contained the following preamble:

"Appearance, personal and group, is very important. Group appearance is the result of the sum total of each individual's appearance. Personal appearance includes dress, cleanliness, and the many personal traits which can be controlled for all occasions. Attending school is a business; it is the work in which students are engaged. All students will be expected to be clean, well-groomed and decently covered when they attend school."

As to the hair of girls the code provided:

"Hair must be styled or arranged so as not to cover the eyes."

As to the hair of boys the code provided:

"Sideburns, moustaches, and beards *are* acceptable *if* kept clean, well-groomed, and of moderate length.

"Boys hair shall be no longer than the bottom of the ear lobes on the sides and no longer than the bottom of a dress shirt collar in the back when the boy is standing. Hair must be kept *clean*, well-groomed, and out of the eyes at all times."

Under the dress code forms of writing, lettering and factory printing on clothing were acceptable "if in good taste." Blouses and shirts had to be tucked in, unless they were square cut and no longer than wrist length when standing. Every student was required to wear footwear. Hats and caps were not to be worn in the buildings without office permission. Cut-off and frayed shorts were not acceptable. The code permitted the coaches to modify the code as to students engaged in sports.

After the code was adopted twenty boys in Campus High School were advised by the principal that they were in violation of the rules on the style of hair and were given a reasonable time to comply. (There were approximately 540 boys and 560 girls attending classes at Campus High School during the 71-72 school year.) Of the twenty boys not in compliance with the hair regulation all except four of the boys did comply. Three of the boys who refused to comply are the appellants herein.

On refusing to comply appellants were first suspended and later expelled by the board. At each of the administrative hearings held in accordance with K. S. A. 1971 Supp. 72-8901 *et seq.*, the students stipulated that the length of their hair was in violation of the provisions of the dress code. There can be no question the grounds for suspension specified in K. S. A. 1971 Supp. 72-8901 (*a*) were established by the board. There was a willful violation on the part of these students of a published regulation for student conduct adopted and approved by the board of education.

Article 6 of the Constitution of the State of Kansas in part provides:

"§ 1. **Schools and related institutions and activities.** The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law.

. . . . . . . . . . . . .

"§ 5. **Local public schools.** Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards. . . ."

Opportunity of education, where the state has undertaken to provide it, must be made available to all on equal terms. (*Brown v. Board of Education of Topeka,* 347 U. S. 483, 98 L. Ed. 873, 74 S. Ct. 686, 38 A. L. R. 2d 1180.) The legislature of this state in compliance with the constitutional mandate has established a system of local public schools which are placed under the supervision

of locally elected boards of education. These boards are invested with authority to operate the schools, to provide rules and regulations to govern the learning process, subject, however, to the recommendations of the state board of education and the statutes of this state. (See K. S. A. 1971 Supp. 72-8205.) The legislature has authorized the local board to suspend and expel students in certain specified instances.

K. S. A. 1971 Supp. 72-8901 provides:

"The board of education of any school district may suspend or expel, or by regulation authorize any certificated employee or committee of certificated employees to suspend or expel, any pupil or student guilty of any of the following:

"(a) Willful violation of any published regulation for student conduct adopted or approved by the board of education, or

"(b) conduct which substantially disrupts, impedes or interferes with the operation of any public school, or

"(c) conduct which substantially impinges upon or invades the rights of others, or

"(d) conduct which has resulted in conviction of the pupil or student of any offense specified in chapter 21 of the Kansas Statutes Annotated or any criminal statute of the United States, or

"(e) disobedience of an order of a teacher, peace officer, school security officer or other school authority, when such disobedience can reasonably be anticipated to result in disorder, disruption or interference with the operation of any public school or substantial and material impingement upon or invasion of the rights of others."

The act limits the period of expulsion, requires that the board afford the student a due process hearing and provides for a record of the testimony at the hearing.

In the present case the only conduct proscribed by the act with which we are presently concerned is covered in paragraph (a), willful violation of a published regulation.

The students contend in this appeal that the dress code of the Haysville Unified School District as enacted and adopted violates their individual rights under the Constitution of the United States. They argue: (1) It deprives them of liberty in controlling their personal appearance in violation of the 5th, 9th and 14th Amendments. (2) It takes their personal property without sufficient state justification in violation of the 14th Amendment. (3) It denies them equal protection of the law and discriminates between male and female students in violation of the 14th Amendment. (4) It violates freedom of speech under the 1st Amendment in that long hair is symbolic speech and an expression of non-conformity.

The parties to this appeal cite many cases which have been de-

cided by the federal district and circuit courts relating to "hair regulation cases". We have found additional cases emanating from the federal courts. Our research indicates that no fewer than 78 "hair regulation cases" have been heard, recorded, appealed, researched, briefed, argued, decided, written and reported in the case law of this nation.

After reading and studying the federal case law, including orders of the Supreme Court of the United States, some comments are in order.

The federal circuit courts cannot agree that the right of a male student to wear his hair on his shoulders is a federally protected right under the United States Constitution. (See discussion of cases in *Bishop v. Colaw*, 450 F. 2d 1069, and *Karr v. Schmidt*, 460 F. 2d 609.) Even the circuit courts which hold it to be a federally protected right cannot agree which amendment supports the right. (See discussion of cases in *Richards v. Thurston*, 424 F. 2d 1281, at p. 1283.) Other circuit courts have adopted and applied what might be referred to as a rule of abstention in student "hair regulation cases". (See *Freeman v. Flake*, 448 F. 2d 258 [10 CA. 1971], and *Valdes v. Monroe County Board of Public Instruction*, 325 F. Supp. 572.) These latter courts indicate the right does not rise to a level of fundamental significance which would warrant recognition as a substantive constitutional right; said right may be subjected to regulation, and regulation should be left to the local states in which the school systems are operated and maintained. We agree with the cases which are cited last.

In denying a motion to vacate which sought to reinstate an injunction against a school hair regulation Mr. Justice Black in *Karr v. Schmidt*, 401 U. S. 1201, 27 L. Ed. 2d 797, 91 S. Ct. 592, stated:

"I refuse to hold for myself that the federal courts have constitutional power to interfere in this way with the public school system operated by the States. And I furthermore refuse to predict that our Court will hold they have such power. It is true that we have held that this Court does have power under the Fourteenth Amendment to bar state public schools from discriminating against Negro students on account of their race but we did so by virtue of a direct, positive command in the Fourteenth Amendment, which, like the other Civil War Amendments, was primarily designed to outlaw racial discrimination by the States. There is no such direct, positive command about local school rules with reference to the length of hair state school students must have. And I cannot now predict this Court will hold that the more or less vague terms of either the Due Process or Equal Protection Clause have robbed the States of their traditionally recognized power to run their school systems in accordance

with their own best judgment as to the appropriate length of hair for students." (p. 1202.)

The motion in *Karr* was later examined and denied by the whole court without additional comment. (See *Karr v. Schmidt*, 401 U. S. 930, 28 L. Ed. 2d 211, 91 S. Ct. 914.) The high court has consistently refused to examine these cases. (See *Pope v. Haimowitz* and *Spillers v. Slaughter*, 401 U. S. 930, 28 L. Ed. 2d 211, 91 S. Ct. 914; and *Olff v. East Side Union High School District*, 404 U. S. 1042, 30 L. Ed. 2d 736, 92 S. Ct. 703.)

In *Olff* Mr. Justice Douglas, dissenting forcefully, states the case for the students.

Our examination of the briefs in the present case and of the federal case law in this area convinces this court it should not enter the tangled thicket of federal constitutional law which has suddenly sprouted and grown from what may appear to us personally to be seeds of protest against society in the form of hair styles originating among the younger generation. Such changes in hair style and personal appearance by dissidents have many times brought change in the customs and mores of a society as may be attested by reading world history.

We decline, however, to enunciate either the nature or source of a person's privilege in this country to govern his own appearance and hair style. As we view the question presented the exact source of that privilege does not bear upon an ultimate decision in the case. A student has a right to govern his own personal appearance but the state has a countervailing interest in providing public education for all students, and on proper showing that state interest may justify intrusion upon the student's individual right.

When the due process hearing, provided by K. S. A. 1971 Supp. 72-8901 *et seq.*, has been afforded the student and it is stipulated the student did willfully violate a published regulation for student conduct adopted by the board of education, the sole remaining question is whether the regulation is constitutionally permissible.

So in the present case the question is *not* whether the male student hair regulation is constitutionally permissible as to a particular student or under a particular set of facts involving a particular student. The question is much broader and relates to the circumstances existing at the particular school facility where the regulation was legislated. The only factual issue to be resolved is whether the board of education has shown a reasonable justification, in

terms of the general educational process or the disciplinary problems at the school facility sufficient to justify the regulation as one with a rational school purpose. Its adoption must be motivated by legitimate school concerns. It must not be arbitrary, capricious or unreasonable and it must not be unfairly or discriminately enforced.

With that perspective we turn to the question: Is the present regulation a reasonable school regulation for Campus High School?

The fact that students, parents, administrators and school board members participated in drafting a school dress code which was adopted by the board of education and approved by a majority of the students does not *per se* make the regulation reasonable. The fact that a challenged plan is approved by the electorate is without constitutional significance. (*Lucas v. Colorado Gen. Assembly,* 377 U. S. 713, 12 L. Ed. 2d 632, 84 S. Ct. 1459.) It bears only upon the good faith of the board in adopting and enforcing such a regulation.

A school regulation must not be oppressive or unreasonable. A regulation to be reasonable must be a proper one to further the educational processes in the school and the means adopted to accomplish a purpose must be appropriate to accomplish the educational mission.

Similar constitutional protections limit the authority of a city to pass city ordinances under the police power. (See *Grigsby v. Mitchum,* 191 Kan. 293, 380 P. 2d 363, cert. den. 375 U. S. 966, 11 L. Ed. 2d 415, 84 S. Ct. 483, and *City of Lyons v. Suttle,* 209 Kan. 735, 498 P. 2d 9.)

Governmental regulation may be unconstitutional *per se* if it discriminates on the basis of race, creed or wealth. In *State v. Smith,* 155 Kan. 588, 127 P. 2d 518, 141 A. L. R. 1023, this court struck down a statute as well as a school regulation by which a school board attempted to justify expelling children from school because of sincere religious beliefs. The students and their parents refused to salute the flag of the United States of America. It was held that public schools are required to afford educational facilities and training to all pupils of the state without regard to their *race, creed* or *wealth.*

However, the limitation placed upon the students in the present case does not fall in this category.

We turn now to the evidence before the trial court. It was stipulated by the parties that during several years preceding the adoption of the present student hair regulation much controversy ex-

isted among the parents, students and administrators within the Haysville school district over dress and hair styles.

The three students testified generally that female students were permitted to wear their hair longer than the boys. They knew of no disturbance or distraction among the students arising from the length of their own hair. On one occasion after their expulsion they came to school to get their assignments and books and some three or four other students talked to them while on campus but there was no commotion or disturbance. One of the officials ordered the students who had assembled back to their classes. Each of the appellants was given an opportunity by the principal to comply with the hair regulation. One of the students testified he was offended by a statement by one of his teachers to the effect that the teacher couldn't tell the girls from the boys. A request for transfer to another class was made and granted.

The offending teacher testified he did not direct the joke to any particular individual. He was in favor of the hair regulation. If the boys wore hair long on the sides or over their eyes it was difficult to supervise class work and determine whether each student did his own work or copied from another student's work. He testified it was hard for him to say that any particular hair style distracted the teacher or the student. He indicated that long hair on boys might be considered symbolic as a display against the establishment. He was testifying generally about students when he stated:

"Oh, I've seen some of them do things. In fact, I feel sorry for the administration if—a case like this isn't upheld. Because we see them sitting around on lockers or radiators or on top of lockers or walking across the grass. They do—you don't protect us in this instance, then we won't have any hold on them otherwise. This is an issue more than just long hair, the way I feel."

A teacher in the metal shop testified long hair was a safety problem in his classes. He asked his students to wear head bands and this helped but was not a complete answer to the safety problem. The students had trouble in putting on their safety hoods if their hair was long. No accidents had occurred in his classes because of long hair. Only one of the appellants was in his classes.

The principal at Campus High School held a B. S. degree, a master's degree and a school administrator's certificate. He had previously been a classroom teacher for eight years. He testified that he had no disciplinary conferences with the appellants during the 1971 school year except for hair length. In the year preceding, Kenny Luginbill had one conference on truancy and two confer-

ences on hair length and moustache. Steve Blaine had three conferences on hair length and one on discipline in an art class. He further testified that extremes in hair style and clothing among high school students have the potential to disrupt education in school by distracting the student and the teacher. Such extremes foster discussions among the students, teachers and administrators. Students try to outdo each other and gain attention. Time and attention which should be spent in education is lost in discussions concerning the appearance of students competing for personal attention while attending school. He testified the attitudes of the students toward the school and the faculty were important to the educational mission of the school and that pride in the overall appearance of the student body and faculty had a beneficial effect on the total operation of the school.

He further testified the misconduct of students in Campus High School was not limited to violations of the dress code but that much of his time in disciplining the students related to hair styles. He testified he could operate the school without the dress code, but with difficulty. The difficulties mentioned were problems in the industrial classes, problems in some classrooms, problems in physical education classes, and problems with "show-through" clothing and no shoes. In his opinion as an administrator the quality of education and learning in the school would go down if the dress code was not in force. Extreme fads caused student and teacher distraction which caused disruption of the learning processes. He felt the hair regulation was reasonable.

The superintendent of the Haysville district testified he had served fourteen years as a teacher, principal, administrator and superintendent. He held a doctor's degree in education. He testified the quality of education in a high school is determined by many elements and one of these elements relates to the appearance of both teachers and students. It was his opinion the quality of education in a high school is hampered by permitting extremes in clothing or hair. He explained that even an extreme use of perfume or lotion distracted other students from their studies and the quality of their education might deteriorate. He further testified that extreme hair styles among male students resulted in preoccupation over their hair. Constant combing of the hair was prevalent among such boys. The girls did not comb their hair as much. The reason given to justify permitting long hair on girls and not on boys was the difference in the effect on the general student body. Long hair

on girls was normal and did not distract other students. Extreme hair styles on boys attracted attention and resulted in distraction, discussions and disruptions in school. The present regulation, in his opinion, was reasonable.

There was no evidence that the board or the school officials acted in an arbitrary or capricious manner in enforcing the hair length regulation. All male students were required to comply with the rules and all were notified and given a chance to comply before suspension.

After reading the record there is no question in our minds that much time has been spent by the school officials at Campus High School in adopting and policing the dress code. There is some uncertainty in our minds as to whether problems of behavior and discipline necessitated the dress code or whether the enforcement of the dress code merely contributed to the problems of behavior and discipline. However, we are limited to the evidence in the record. There was substantial evidence adduced in the trial court that the object of the regulation was a proper one to further the educational mission of the school. The means adopted to accomplish this educational purpose was not oppressive or unreasonable and it seems appropriate to accomplish a legitimate educational mission.

Boards of education are given an important role in the training and education of our children. The high school education mission requires that hundreds of immature, volatile and aggressive adolescents be brought together in confined quarters. Most of these youth are seeking their own identity as well as an education. If a suitable atmosphere for instruction, study and concentration is to be provided, the students and the teachers must be subjected to a wide variety of disciplinary rules. For many adolescents learning is a discipline rather than a pleasure and it must be carried on in dignified and orderly surroundings if it is to be practiced satisfactorily. Obedience to duly constituted authority and respect for those in authority should be instilled in young people.

In measuring the appropriateness and reasonableness of school regulations against the personal rights of the individual student, courts should give full credence to the role and purposes of the schools as well as the nature of the problems inherent in the public education of our youth. Careful recognition should be given to differences between what are reasonable restraints in the public classroom and what are reasonable restraints on a non-student on

the public street corner. (See *Gere v. Stanley*, 320 F. Supp. 852 [M. D. Pa. 1970], affirmed 453 F. 2d 205 [3rd Cir.].)

The responsibility for maintaining proper standards for learning and discipline, and for creating a wholesome academic environment in our public schools is vested in the local boards of education, consistent with fundamental constitutional safeguards; and it is not in the courts. If the testimony of the school administrators in this case is not sufficient to show a rational purpose for this regulation then it would appear equally difficult for the board of education to establish a rational purpose in the educational processes to require students to wear shoes or to prohibit them from wearing hats and caps in buildings or from chewing bubble gum in the classroom.

The evidence before the trial court supports its finding and conclusion that extreme hair styles of male students at Campus High School distracts other students, disrupts classroom atmosphere and decorum, and interferes with the educational process. The regulation limiting extreme hair styles of male students appears to have a rational purpose with substantial support in the evidence.

Findings of fact in the district court based upon substantial evidence will not be disturbed on appeal unless they are clearly erroneous. (See Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 507.)

The means adopted to accomplish the educational purpose in the present case appears to be appropriate for Campus High School. The regulation was not unduly oppressive or unreasonable. The regulation was evenly enforced as to all male students. There was no discrimination as to these particular appellants.

In the final analysis the framers of the Kansas Constitution provided in Article 6, § 5 for public schools to be operated by locally elected boards. The legislature has authorized these locally elected boards to adopt reasonable regulations to carry out their educational mission. The local problems in carrying out the educational mission may vary widely depending on the location of the districts and the background of the people in that district. When as here the finding of reasonableness of a school regulation is supported by some substantial evidence this court should not substitute its judgment for that of the district court and the board.

The judgment is affirmed.

PRAGER, J., dissenting: I agree with Justice Douglas' statement that it seems incredible that a school board can deny a student an

education in its public school system unless his hair style conforms with the standards of the school board. (*Olff v. East Side Union High School District*, 404 U.S. 1042, 30 L. Ed. 2d 736, 92 S. Ct. 703.) Hair styles change. A high school boy if he chooses should be able to wear his hair as Yul Brynner does or as Joe Namath does without fear of being deprived of an education by school administrators and school board members who grew up at a time the crew-cut was fashionable. To me the right to wear one's hair as one pleases, although unspecified in our Bill of Rights, is a fundamental right inherent in the concept of individual liberty. It finds its origin in that great reservoir of personal rights recognized by the Ninth Amendment to the Constitution of the United States and protected from arbitrary state action by the Due Process Clause of the 14th Amendment. I think it obvious that one's hair style, like one's taste for food, or one's liking for certain kinds of music, art, reading or recreation, is fundamental in our constitutional scheme—a scheme designed to keep government off the backs of people. Judge Wisdom stresses the importance of the right to wear one's hair as one pleases in his dissenting opinion in *Karr v. Schmidt*, 460 F. 2d 609, in the following language:

". . . Hair is a purely personal matter—a matter of personal style which for centuries has been one aspect of the manner in which we hold ourselves out to the rest of the world. Like other elements of costume, hair is a symbol: of elegance, of efficiency, of affinity and association, of non-conformity and rejection of traditional values. A person shorn of the freedom to vary the length and style of his hair is forced against his will to hold himself out symbolically as a person holding ideas contrary, perhaps, to ideas he holds most dear. Forced dress, including forced hair style, humiliates the unwilling complier, forces him to submerge his individuality in the 'undistracting' mass, and in general, smacks of the exaltation of organization over member, unit over component, and state over individual. I always thought this country does not condone such repression." (p. 621.)

The well-written opinion of Mr. Justice Fromme points out the wide disagreement among the various federal and state courts throughout this country. I recognize that the result reached by the majority here finds support in many cases. It can not be denied, however, that an equal number of courts to the contrary hold in favor of the long-haired student and against the school board.

The majority opinion recognizes that a person in this country has a right to goven his own personal appearance, including the length of his hair, without unreasonable interference by the state. Certainly a state by statute or a city by ordinance could not con-

stitutionally interfere with personal liberty by prescribing a certain hair length for all citizens. Neither the constitution nor the people would tolerate such an invasion of personal liberty. The problem presented in this case is whether or not a different rule can or should be applied to our young people when attending the public schools of this state.

In *Tinker v. Des Moines School Dist.*, 393 U. S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733, the Supreme Court of the United States held that state-operated schools may not be enclaves of totalitarianism, and school officials do not possess absolute authority over their students. The court further held that students in state-operated schools, as well as out of school, are "persons" under the Federal Constitution, and are possessed of fundamental rights which the state must respect, just as they themselves must respect their obligations to the state. The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. In the *Tinker* opinion it is, of course, recognized that conduct by a student, in class or out of it, which for any reason materially disrupts classwork or involves substantial disorder or invasion of the rights of others, is not immunized by the constitution.

I recognize that the responsibility for maintaining proper standards for learning and discipline, and for creating a wholesome academic environment in our public schools is vested in the local board of education, consistent with fundamental constitutional safeguards. I agree with the majority opinion where it states that a school regulation must not be oppressive or unreasonable; a regulation to be reasonable must be a proper one to further the educational processes in the school, and the means adopted must be appropriate to accomplish the educational mission.

The fundamental issue presented in this case is whether or not the dress code regulation pertaining to the length of a male student's hair in the Haysville Campus High School is a reasonable school regulation in view of the fact that the restriction of the length of one's hair is an invasion of personal liberty as discussed heretofore. It seems reasonable to place the burden upon the school board to show some compelling reason justifying the regulation. This burden has been recognized in the past in the decisions of this court.

Back in 1881 in *Board of Education v. Tinnon*, 26 Kan. 1, a school board sought to establish separate schools for the education of white and black children and to exclude the black children from

the white schools. In holding that the board of education had no such authority the court pointed out the importance of proper education to our young people and the importance of nonconformity in our school system by stating as follows:

"The tendency of the present age is not to make any distinctions with regard to school children, except to classify them with reference to their studies and place them in the classes in which they properly belong. All kinds of children are usually allowed to go to the same schools, and all kinds of children are usually placed in the same classes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Is it not better for the grand aggregate of human society, as well as for individuals, that all children should mingle together and learn to know each other? At the common schools, where both sexes and all kinds of children mingle together, we have the great world in miniature; there they may learn human nature in all its phases, with all its emotions, passions and feelings, its loves and hates, its hopes and fears, its impulses and sensibilities; there they may learn the secret springs of human actions, and the attractions and repulsions, which lead with irresistible force to particular lines of conduct. But on the other hand, persons by isolation may become strangers even in their own country; and by being strangers, will be of but little benefit either to themselves or to society. As a rule, people cannot afford to be ignorant of the society which surrounds them; and as all kinds of people must live together in the same society, it would seem to be better that all should be taught in the same schools." (p. 19.)

Although that case involved separation of the races the reasons stated logically apply to a separation of our children because of their different ideas or because of the different lengths of their hair. I have never heard it suggested that one of the purposes of public education is to achieve conformity in our young people.

In *Nutt v. Board of Education,* 128 Kan. 507, 278 Pac. 1065, a school board sought to refuse to permit a young girl to attend high school because she was a married woman and had purportedly conceived a child out of wedlock. This court in *Nutt* recognized a constitutional and statutory right of every child in this state to attend our public schools. It noted, however, that this right is subject always to reasonable regulations, and a child who is of a licentious or immoral character may be refused admission. It is further pointed out that school authorities may exclude from association with the school anyone who may be or becomes undesirable from either physical malady or moral unfitness. It was held that the young girl should have been permitted to attend high school emphasizing the burden placed upon the school board to justify expulsion of a student. In *Nutt* we said:

"The public schools are for the benefit of children within school age, and efficiency ought to be the sole object of those charged with the power and privilege of managing and conducting the same, and while great care should be taken to preserve order and proper discipline, it is proper also to see that no one within school age should be denied the privilege of attending school unless it is clear that the public interest demands the expulsion of such pupil or a denial of his right to attend." (p. 509.)

The thrust of those decisions is that the children of this state are entitled to attend the public schools unless the state acting through the school board shows that some public interest demands his expulsion or a denial of his right to attend. I respectfully submit that the expulsion of the three boys in the case at bar is not justified under the record presented in this case. The only claimed justification for the school regulation limiting the length of a male student's hair is that extreme hair styles distract other students thereby disrupting class and interfering with the educational process. The majority opinion correctly expresses some doubt as to whether problems of behavior and discipline necessitate the dress code or whether the enforced dress code merely contributes to the problems of behavior and discipline.

The testimony of the various witnesses on behalf of the school administration does not set forth a single occasion where the length of a student's hair caused a disruption or distraction, with one possible exception. A distraction may have been brought about by one instructor, T. W. Mauck, who noting the length of hair on young Blaine joked about being unable to tell the boys from the girls these days. Young Blaine took the comment personally and requested a transfer from the class. Mr. Mauck testified that extreme hair styles are really very amusing but admitted they did not bother him very much and that hair style didn't make a lot of difference to his teaching. He objected to long hair because it was symbolic of the anti-establishment. James Flummerfelt, a teacher in the metal shop, testified that it would be a lot nicer if the boys working with machinery had shorter hair but that he had never had any accidents involving students because of long hair. His testimony was that headbands of some type adequately solved the problem of safety in his department.

Don Layton, the principal of Haysville Campus High School objected to long hair for the reason that extreme hair styles have "*potentially* the ability to disrupt education within the school." (Emphasis supplied.) He felt that long hair hurts student pride

and also that the failure to control something in school results in a loss of pride. He could not pinpoint any actual misconduct associated with those students with long hair. Mr. Layton did give as examples of disruption two articles written by students in the school newspaper objecting to the hair code. These two articles, one of which was an editorial and one of which a letter from a girl student, simply urged the students to speak out and express their opinions about the dress code. It is inconceivable that a high school principal would object to an expression of opinion by students on a subject which caused them concern. This is especially true today where our 18-year-old young people are qualified to vote and a number of high school students are of voting age. Perhaps they should be encouraged to use their minds and express their opinions. Mr. Layton further testified that if the school board had picked shoulder length hair that would have been the dress code and that would have been all right in his opinion.

Dr. W. H. Phillips, the superintendent of schools, frankly stated that it would be rather difficult for him to say that the hair code was reasonably related to conduct of the educational system. His rationale for supporting the hair code is essentially this: It is unusual for boys to have long hair; therefore it causes some distraction. This distraction may cause disturbance of the educational process.

It is, of course, impossible to remove from a high school atmosphere the things which normally distract young people. A pretty girl may be extremely distracting to many of our high school boys; yet we would not consider expelling her from school to avoid a distraction. There is nothing disturbing in long-hair per se. If the long-haired student himself causes a disturbance he may be handled with appropriate disciplinary action. If other students cause disturbances because of their prejudices against long hair on male students, then it seems to me the school system should take steps to adopt a program to encourage tolerance of individual differences. I question whether our schools can become "the world in miniature" by a rule excluding students who are different and nonconforming. I would hold the hair provision of the dress code to be an unconstitutional invasion of the appellants' personal liberty and would order their reinstatement in school.

I respectfully dissent from the decision of the majority.

SCHROEDER, J., joins in the foregoing dissent.