No. 74,889
# In the Matter of C.M.J.
(915 P.2d 62)

Opinion filed April 19, 1996.

*Donna M. Pond*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellant State of Kansas.

*Gregory M. Coggs*, of Kansas City, argued the cause and was on the brief for appellee C.M.J.

The opinion of the court was delivered by

LARSON, J.: The State of Kansas appeals the dismissal of a complaint seeking adjudication of C.M.J. as a juvenile offender based on his possession of a loaded semi-automatic pistol in the parking lot at Shawnee Mission Northwest High School, in violation of K.S.A. 21-4204a.

The trial court ruled C.M.J. could not be adjudicated a juvenile offender based on the same conduct that caused his expulsion from a public high school, without violating constitutional double jeopardy protections.

The State appealed. We have jurisdiction under K.S.A. 22-3602(b)(1). We hold the trial court's ruling was erroneous and remand for further action pursuant to the Kansas Juvenile Offenders Code.

*Factual Background*

On April 28, 1995, police and school officials, acting on an anonymous tip, conducted a facially consensual search of C.M.J.'s truck in the parking lot of Shawnee Mission Northwest High School, where C.M.J. was enrolled as a 10th grade student. The search revealed a loaded semi-automatic pistol with a barrel less than 12 inches long. As a result of this discovery, disciplinary proceedings against C.M.J. were begun by the school, and a separate juvenile proceeding commenced.

C.M.J. was immediately suspended from school for 5 days and a hearing was scheduled for May 1, 1995, to consider his expulsion. At that hearing, the suspension/expulsion committee found C.M.J.'s possession of a gun on school property violated school district policy and warranted expulsion for the remainder of the current semester (spring 1995) and the entire following semester (fall 1995). The committee's determination was appealed to the school board, which affirmed the expulsion.

The complaint in the juvenile proceeding was filed May 19, 1995, and sought to have C.M.J. adjudicated a juvenile offender for violating K.S.A. 21-4204a. C.M.J. argued that adjudicating him a juvenile offender based on the same conduct which resulted in his expulsion from school would constitute multiple punishment for the same offense, contrary to constitutional double jeopardy protections.

Harlan Hess, associate principal of Shawnee Mission Northwest, testified concerning C.M.J.'s expulsion. Hess stated his duties included disciplinary matters at the school. He testified that because possession of a gun on school property was a violation of school policy, C.M.J. was initially suspended for 5 days and a longer term of expulsion was recommended. Although Hess was unsure of the technical difference between remedial and punitive sanctions (he appeared to view remedial as synonymous with rehabilitation), he

opined that both short-term suspension and expulsion were puni-
tive in nature. According to Hess, expulsion helps maintain order
by illustrating that violations of school policies bring consequences,
and thus acts as a deterrent. Hess agreed that the school's duty is
to promote a safe environment for teachers, administrators, and
students, and stated that expelling students for conduct which
threatens others promotes school safety.

*Scope of Review*

There is no dispute as to the underlying facts regarding C.M.J.'s
expulsion and the subsequent attempt by the State to adjudicate
him a juvenile offender. Where the facts are uncontroverted, a trial
court decision that double jeopardy applies is subject to de novo
review on appeal. *State v. Mertz*, 258 Kan. 745, Syl. ¶ 1, 907 P.2d
847 (1995).

*Arguments*

The protection against double jeopardy has its source in both
the United States and Kansas Constitutions:

"The Fifth Amendment Double Jeopardy Clause of the United States Consti-
tution states: '[N]or shall any person be subject for the same offence to be twice
put in jeopardy of life or limb.' The double jeopardy guaranty is enforceable
against the states through the Fourteenth Amendment. *North Carolina v. Pearce*,
395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Kansas also enforces an
analogous double jeopardy clause in Section 10 of the Kansas Constitution Bill of
Rights. It states: 'No person shall . . . be twice put in jeopardy for the same
offense.' The double jeopardy protection guaranteed in the Kansas Constitution
Bill of Rights is equivalent to the protection guaranteed in the United States
Constitution. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994)."
*Mertz*, 258 Kan. at 749.

In *Mertz*, we summarized the scope of the double jeopardy pro-
tections:

"The Double Jeopardy Clause of the United States Constitution provides three
different types of protection for a person charged with a crime. Double jeopardy
protection shields an accused from: (1) a second prosecution for the same offense
after acquittal, (2) a second prosecution for the same offense after conviction, and
(3) multiple punishments for the same offense." 258 Kan. 745, Syl. ¶ 3.

C.M.J. contends that prosecuting him as a juvenile for the crime
of possessing a firearm subjects him to multiple punishments for

the same offense because he has already been expelled from school. In making this argument he relies on *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), in which the United States Supreme Court found that in rare instances a civil sanction may qualify as punishment for double jeopardy purposes. We noted the rule developed in *Halper* when we held: "A civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *Mertz*, 258 Kan. 745, Syl. ¶ 4.

Although associate principal Hess classified C.M.J.'s expulsion as punishment, that testimony is not determinative. "[L]abels do not control in a double jeopardy inquiry." *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. 767, 779, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994). Whether a given civil sanction is punishment for double jeopardy purposes is a question for the court, not for the authority imposing the sanction. In *Mertz*, relying on *Halper*, we outlined the test to be applied:

"The determination of whether a given civil sanction constitutes punishment for double jeopardy purposes requires a particularized assessment of the penalty which the sanction may fairly be said to serve." 258 Kan. 745, Syl. ¶ 4.

"In determining if a civil proceeding has a retributive, deterrent, or remedial purpose, a court must use common sense. The court makes this determination from the objective viewpoint and not from the viewpoint of the defendant." 258 Kan 745, Syl. ¶ 6.

Although we said in *Mertz*, 258 Kan. 745, Syl. ¶ 5, that "[a] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment," nevertheless, a civil sanction will rarely qualify as punishment for double jeopardy purposes. We recognized this in *Mertz* when we said:

"The rules announced in *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S.Ct. 1892 (1989), concerning the issue of whether a civil sanction constitutes punishment so as to prohibit a criminal prosecution for the same offense are rules for the rare case." 258 Kan. 745, Syl. ¶ 7.

The Tenth Circuit Court of Appeals explained this issue in *U.S. v. Bizzell*, 921 F.2d 263, 266 (10th Cir. 1990):

"In *Halper*, the Court clarified the application of civil remedies to the Double Jeopardy Clause, stating a civil remedy enacted by the government does not rise to the level of proscribed 'punishment' unless 'in a particular case a civil penalty . . . may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.' *Halper*, 109 S. Ct. at 1898."

Furthermore, a sanction is deemed to have a remedial purpose if it protects the public from harm. Even though it may appear to have punitive effects and might be interpreted as punishment, if it also can support a construction as remedial, it will not form the basis for a challenge on the grounds of double jeopardy. See *Mertz*, 258 Kan. 745, Syl. ¶¶ 8, 10.

In short, a civil sanction may invoke double jeopardy protections as a form of "punishment" only if it is grossly disproportional to legitimate State goals separate from those served by criminal prosecution. See *Kurth Ranch*, 511 U.S. at 779, 784. *Halper*, 490 U.S. at 452. Neither the severity of the sanction nor the fact that it has a deterrent purpose automatically establishes that it is a form of punishment. See *Kurth Ranch*, 511 U.S. at 780. Nor does the fact that the sanction has a punitive component invoke double jeopardy protection where the government's remedial interests are tightly intertwined with its punitive interests. See *U.S. v. Hernandez-Fundora*, 49 F.3d 848, 852 (2d Cir. 1995) (remedial interest of maintaining order in a prison setting permits sanctions with punitive component, without being punishment for double jeopardy purposes). "[T]he fact that remedial concerns require 'punishing' individuals for violent or other disruptive conduct [in an institutional setting] does not mean that the sanctions imposed constitute 'punishment' for double jeopardy purposes." *Hernandez-Fundora*, 49 F.3d at 852.

"In *Halper*, the Supreme Court noted that 'punishment serves the twin aims of retribution and deterrence.' *Halper*, 490 U.S. at 448, 109 S. Ct. at 1901. However, the converse is not true: a deterrent purpose does not automatically mark a civil sanction as a form of punishment. *Kurth Ranch*, 511 U.S. at 780, 114 S. Ct. at 1946. General deterrence is the foremost and overriding goal of all laws, both civil and criminal, and transcends the nature of any sanction." *Bae v. Shalala*, 44 F.3d 489, 494 (7th Cir. 1995).

There is no evidence in this case that expulsion is imposed only after a student has committed an act which is also a crime. In fact,

the expulsion in this case was not based on the commission of a crime, but on the violation of a district policy. Furthermore, there is no evidence that the sanction is disproportionate to the school board's important nonpunitive purposes.

As noted above, it is the disproportionality of the civil sanction to the government's noncriminal interest which may ultimately render the sanction punishment for double jeopardy purposes. Therefore, any analysis of whether a given sanction is "punishment" must begin with the purpose the sanction is to serve, and continue by comparing the sanction actually imposed to that purpose.

K.S.A. 1995 Supp. 72-8901, which authorizes the expulsion of students, provides:

"The board of education of any school district may suspend or expel, or by regulation authorize any certified employees to suspend or expel, any pupil or student guilty of any of the following:

"(a) Willful violation of any published regulation for student conduct adopted or approved by the board of education;

"(b) conduct which substantially disrupts, impedes, or interferes with the operation of any public school;

"(c) conduct which endangers the safety of others or which substantially impinges upon or invades the rights of others at school, on school property, or at a school supervised activity;

"(d) conduct which, if the pupil is an adult, constitutes the commission of a felony or, if the pupil is a juvenile, would constitute the commission of a felony if committed by an adult;

"(e) conduct at school, on school property, or at a school supervised activity which, if the pupil is an adult, constitutes the commission of a misdemeanor or, if the pupil is a juvenile, would constitute the commission of a misdemeanor if committed by an adult; or

"(f) disobedience of an order of a teacher, peace officer, school security officer or other school authority when such disobedience can reasonably be anticipated to result in disorder, disruption or interference with the operation of any public school or substantial and material impingement upon or invasion of the rights of others."

The State has important nonpunitive purposes served by administrative expulsion. School administrators have broad authority and responsibility to control the educational setting. The authority is so broad that restrictions for the purpose of maintaining discipline

and promoting an environment conducive to education may be permitted in a public school which would not be permitted in other contexts. *Blaine v. Board of Education*, 210 Kan. 560, 570-71, 502 P.2d 693 (1972); see *Haverkamp v. Unified School Dist. No. 380*, 689 F. Supp. 1055, 1059 (D. Kan. 1986).

We have explained the vital remedial role expulsion may serve in maintaining institutional order within a public school:

"Boards of education are given an important role in the training and education of our children. The high school education mission requires that hundreds of immature, volatile and aggressive adolescents be brought together in confined quarters. Most of these youth are seeking their own identity as well as an education. If a suitable atmosphere for instruction, study and concentration is to be provided, the students and the teachers must be subjected to a wide variety of disciplinary rules. For many adolescents learning is a discipline rather than a pleasure and it must be carried on in dignified and orderly surroundings if it is to be practiced satisfactorily. Obedience to duly constituted authority and respect for those in authority should be instilled in young people." *Blaine*, 210 Kan. at 570.

The school administration also has a compelling interest in assuring safety in school facilities. Public school attendance in Kansas is mandatory. K.S.A. 72-1111. One prerequisite to empowering the State to enforce such a compulsion is that attendance must not expose the students "to daily dangers to life and limb so obvious and so great that in the exercise of reasonable prudence their parents should not permit them to incur the hazard." *Williams v. Parsons*, 79 Kan. 202, Syl. ¶ 1, 99 Pac. 216 (1908).

"The responsibility for maintaining proper standards for learning and discipline, and for creating a wholesome academic environment in our public schools is vested in the local boards of education." *Blaine*, 210 Kan. at 571. Administrative expulsion from school is not an unreasonable and disproportionate sanction for the violation of reasonable regulations adopted to carry out the educational mission. See 210 Kan. at 571. Administrative sanctions removing a student from school are a proper exercise of the school's power to maintain discipline and become unreasonable only when used toward some goal other than the effective administration of a school with order and discipline. See *Nutt v. Board of Education*, 128 Kan. 507, 509, 278 Pac. 1065 (1929).

We hold it is clear that under Kansas law expulsion from a school for violation of school district policy is not punishment so as to invoke the protection of constitutional double jeopardy restrictions.

Other courts which have considered the issue of whether an administrative expulsion from public school constitutes punishment sufficient to bar a subsequent prosecution have rejected the argument. In *Paine v. Board of Regents of University of Texas Sys.*, 355 F. Supp. 199, 203, (W.D. Tex. 1972), *aff'd* 474 F.2d 1397 (5th Cir. 1973), it was held there was no impermissible double punishment when a university student was both prosecuted criminally for a drug offense and suspended from the University of Texas system. The court found that the interests served by the two sanctions were very different. The criminal charges were intended to vindicate public justice, a punitive goal, while the automatic suspension served the remedial goal of protecting "the university community and the educational goals of the institution from such adverse influence as the offender may wield if he is allowed to remain a student." 355 F. Supp. at 203.

Similarly, in *Clements v. Board of Trustees of Sheridan Cty.*, 585 P.2d 197 (Wyo. 1978), a high school student was found not subject to double jeopardy when he was expelled from school for purposefully impeding a school bus by his reckless driving, even though he was acquitted of criminal charges for the same conduct. The court held that the suspension was not punishment for double jeopardy purposes, stating:

"It is apparent that throughout these proceedings the Board was primarily concerned with the safety of pupils being transported in its school buses. While it cannot be denied that the imposition of a suspension from school has certain punitive effects, the underlying purpose of the Board's action . . . is the protection of other students—not the vindication of public justice." 585 P.2d at 203.

More recent post-*Halper* decisions reach the same result. In a case startlingly similar to ours, *State in Interest of Dandridge*, 614 So. 2d 129 (La. App. 1993), the court rejected an argument that *Halper* was applicable to a case where a student was expelled from school for possessing a firearm on school property. Similarly, in *Matter of Gila County Juvenile Action*, 169 Ariz. 53, 816 P.2d 950 (Ct. App. 1991), the court held that *Halper* did not prohibit both

the expulsion of a student and criminal prosecution for the same conduct. The court reasoned:

"While the school board's action in expelling a student from school clearly has a punitive effect on the individual student, we believe its primary purpose and function is to protect the other students and the faculty and to preserve the integrity and continuity of the educational process.

"The school officials, as a body and individually, have a responsibility for maintaining order upon the school premises so that education, teaching and training of the students may be accomplished in an atmosphere of law and order. In measuring the reasonableness of an expulsion, courts must give credence to the role and purpose of the schools and the means available to school administrators to deal with their problems. *Kelly v. Martin*, 16 Ariz. App. 7, 11; 490 P.2d 836, 840 (1971)." 169 Ariz. at 54.

In sum, there is absolutely no merit to C.M.J.'s claim that juvenile adjudication for an action which also disrupted school discipline and safety as to warrant his expulsion constitutes double jeopardy. C.M.J.'s argument that his expulsion was longer than allowed by statute is not applicable to this case and is nothing more than an improper attempt to collaterally attack the administrative expulsion, which is not properly before this court.

Finally, C.M.J. contends for the first time at oral argument that *Mertz* is not applicable because having a driver's license is a privilege while obtaining an education is a right. This contention ignores the fundamental concepts of double jeopardy outlined in this opinion and merely notes a distinction with no legal difference under the facts of this case.

The trial court erred in holding double jeopardy principles prohibited the State from proceeding with the attempted juvenile adjudication and dismissing the case against C.M.J.

Reversed and remanded for further action pursuant to the Kansas Juvenile Offender Code.