In the Matter of the WELFARE OF E.R.D., Child.

No. C0–95–2223.

Court of Appeals of Minnesota.

July 2, 1996.

John M. Stuart, State Public Defender, Charlann Winking, and Dwayne A. Bryan, Assistant Public Defenders, Minneapolis, for Appellant.

Roger S. Van Heel, Stearns County Attorney, Janell P. Kendall, Assistant County Attorney, St. Cloud, and Hubert H. Humphrey III, Attorney General, St. Paul, for Respondent.

Considered and decided by NORTON, P.J., and PETERSON and SCHULTZ*, JJ.

## OPINION

NORTON, Judge.

This case raises the legal issue of application of the Double Jeopardy Clause to a public school suspension. Appellant moved to dismiss a juvenile prosecution against him for possession of a dangerous weapon on school property. He claimed that suspension from school for the same conduct was "punishment" barring further punishment in juvenile court. The trial court denied the juvenile's motion and adjudicated him delinquent. Appellant raises only the double jeopardy issue on appeal. We affirm.

## FACTS

On January 3, 1995, a teacher overheard appellant E.R.D. talking to several other students about his new jacket, a pullover "starter" jacket with a university sports logo. The teacher, Steve Bauch, heard the other students joking with E.R.D. about the possibility of being "jumped" (assaulted) because of the jacket. E.R.D. then explained to the others that he had brought a knife to school and would use it if he needed to protect himself. Bauch reported this conversation to school administration staff who then examined E.R.D.'s jacket, which was stored in the school administration office to prevent its theft or damage. The staff found a pocket knife in E.R.D.'s jacket pocket.

The program manager at the school, Ken Johnson, met with E.R.D., who admitted owning the knife found in his jacket. E.R.D.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

stated that he carried the knife after school hours, because he was concerned about his safety. He claimed he had forgotten to remove the knife before coming to school. Johnson immediately suspended E.R.D. from school for five days and reported the incident to Officer Ann Whitson.

On February 2, 1995, the county filed a petition for delinquency, alleging that E.R.D. was in possession of a dangerous weapon on school property in violation of Minn.Stat. § 609.66, subd. 1d(a) (1994). E.R.D. moved to dismiss the petition for lack of probable cause and on grounds the statute is vague and does not require intent of the accused to commit a crime. E.R.D. also sought dismissal based on double jeopardy grounds.

The trial court denied E.R.D.'s motion to dismiss. The court adjudicated E.R.D. delinquent, transferred legal custody of E.R.D. to the county welfare board for placement in a 45–60 day correctional program, and also placed E.R.D. on probation for an indeterminate period of time. E.R.D. then brought this appeal, challenging his adjudication only on double jeopardy grounds.

## ISSUE

Is public school suspension for possession of a weapon on school property "punishment" for purposes of the Double Jeopardy Clause so as to bar a subsequent juvenile prosecution for the same conduct?

## ANALYSIS

■ The Double Jeopardy Clause of the United States Constitution states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision is enforceable against individual states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). Minnesota also enforces a similar double jeopardy protection: "[N]o person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7; *see also* Minn.Stat. § 609.035, subd. 1 (1994) (double

jeopardy statute that eliminates multiple punishments and prosecutions). The Minnesota Supreme Court has declined to decide whether the Minnesota Constitution affords greater double jeopardy protection than the United States Constitution. *State v. Fuller,* 374 N.W.2d 722, 727 (Minn.1985).

■ The supreme court recently summarized the scope of the Double Jeopardy Clause:

[T]he Double Jeopardy Clause offers three separate protections: against a subsequent prosecution for the same offense after either an acquittal or a conviction, and against multiple punishments for the same offense.

*State v. McKenzie,* 542 N.W.2d 616, 618 (Minn.1996). E.R.D. argues that the juvenile delinquency adjudication violates his constitutional right to be free from multiple punishments for the same offense. He contends that the state has already "punished" him for having a weapon on school property in violation of Minn.Stat. § 609.66, subd. 1d(a) (1994), by suspending him from school for five days.[1] The prohibition against double jeopardy applies to juvenile proceedings that are, like the present case, based on violations of criminal statutes. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980). Whether a public school's sanction against a student may be punishment for purposes of double jeopardy, thus barring a subsequent juvenile prosecution for the same conduct, is a question of first impression in Minnesota.

At the outset, the state argues that double jeopardy does not apply where, as here, the civil sanction did not arise from a judicial proceeding. To support this assertion, the state cites our decision in an administrative forfeiture case, *State v. Watley,* 541 N.W.2d 345, 347–48 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996). We noted:

Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to

---

1. Respondent state does not challenge the claim that the public school's action here, taken under statutory authority and procedures concerning suspension of students, constitutes state action.

try the question of the guilt or innocence of the accused."

*Id.* (quoting *Serfass v. United States,* 420 U.S. 377, 391, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975) and *Kepner v. United States,* 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904)). *Serfass* and *Kepner* were cases involving "attachment" of jeopardy in criminal prosecutions. *See Serfass,* 420 U.S. at 391, 95 S.Ct. at 1064 (once jeopardy has attached, court inquires whether a double jeopardy bars retrial).

Our reference to "attachment" of jeopardy in *Watley,* a double punishment case, is unique to the circumstances in that case. We determined that jeopardy had not "attached" in *Watley,* because Watley had failed to initiate a judicial proceeding to claim property that the police had seized when they arrested him. *Id.,* 541 N.W.2d at 348–49. There being no formal claim to the property, as required by statute, we held that Watley had not subjected himself to risk of punishment or guilt when he entered into a stipulation with the county attorney. *Id.* at 349. Significantly, Watley stipulated to an administrative forfeiture in a manner that provided no admission of ownership of the property. *Id.* Under these circumstances, jeopardy in the form of a possible punishment of Watley had not "attached." But here, there is no question that the suspension sanction was against E.R.D., and therefore attached to him. Further, the school disciplinary action involves some form of administrative proceeding and factfinding regarding E.R.D.'s conduct that gave rise to the school sanction. *See* Minn.Stat. § 127.30, subd. 2 (1994) (providing for written notice setting forth grounds for suspension, brief statement of facts, description of testimony, right to informal conference).

■ We now turn to the issue on appeal. To support his claim that the school suspension is "punishment," E.R.D. relies on *United States v. Halper,* 490 U.S. 435, 109 S.Ct.

1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Supreme Court held that in "rare" instances a civil sanction may qualify as punishment for double jeopardy purposes if the sanction "may not fairly be characterized as remedial, but only as a deterrent or retribution." [2] *Id.* at 448–49, 109 S.Ct. at 1901–02. The Minnesota Supreme Court recently issued decisions applying the *Halper* analysis in the context of civil driver license revocation and administrative prison discipline proceedings, holding that neither proceeding constituted punishment for purposes of double jeopardy. *State v. Hanson,* 543 N.W.2d 84, 88–90 (Minn.1996) (civil license revocation followed by prosecution for driving under the influence does not violate Double Jeopardy Clause); *McKenzie,* 542 N.W.2d at 620–21 (disciplining prison inmate with placement in segregation and loss of good time credit served remedial purpose and did not bar subsequent criminal prosecution for same misconduct). The supreme court explained the *Halper* test:

> Any sanction that *only* serves the goals of deterrence and retribution, and cannot be described as remedial, is "punishment" under *Halper.* In our view, this test permits the imposition of a civil sanction that can be "fairly characterized" as remedial, but also may deter or punish the offender.

*McKenzie,* 542 N.W.2d at 619.

■ E.R.D. argues that the suspension here is not sufficiently related to any remedial purpose, but instead was intended only to serve purposes of punishment and deterrence. He contends, without citing legal authority, that the school's sanction must be "narrowly tailored" to serve a remedial purpose. To the contrary, a disciplinary sanction is remedial and does not involve double jeopardy if it is "rationally related to the remedial goal." *McKenzie,* 542 N.W.2d at 620 (quoting *United States v. Newby,* 11 F.3d 1143, 1145 (3rd Cir.1993), *cert denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994)).

---

2. E.R.D., in his appellate brief, argues that the test determining "punishment" for purposes of double jeopardy is whether the civil sanction is "solely remedial." He asserts that a sanction constitutes punishment for purposes of double jeopardy if any part of the sanction serves a retributive or deterrent purpose. The Minnesota

Supreme Court recently reviewed a similar argument and rejected the "solely remedial" test. *State v. Hanson,* 543 N.W.2d 84, 87 (Minn.1996). E.R.D., who filed his brief before release of the *Hanson* decision, acknowledged at oral argument that a "solely remedial" test does not apply here.

■ E.R.D. argues for the first time at oral argument that school discipline is certainly punishment for purposes of double jeopardy, because it affects a student's right to obtain an education, as mandated by law. *See* Minn.Stat. § 120.101, subd. 5 (1994) (requiring compulsory school instruction for children ages 7 through 16). By way of contrast, E.R.D. notes that, in determining that the civil sanction of driver license revocation was not "punishment" for purposes of double jeopardy, the supreme court considered it "crucial" that "[a] driver's license is a privilege * * * laden with civic responsibilities." *Hanson*, 543 N.W.2d at 89. To the extent this distinction has any legal impact, we believe it makes no legal difference in the context of school disciplinary proceedings at issue here. As the state has aptly noted, all students are required to be in school, not just E.R.D. The crucial issue is whether the sanction against a disruptive student serves the remedial educational goals involving all the students, not just E.R.D. Although E.R.D. may have experienced his suspension purely as punishment, we do not review this issue from E.R.D.'s perspective. Whether a particular sanction constitutes punishment for double jeopardy purposes is determined not from "the defendant's perspective," but rather with reference to "the purposes actually served by the sanction * * *." *Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.

■ The supreme court's recent decision regarding double jeopardy in relation to prison disciplinary proceedings guides our review here of school disciplinary proceedings and double jeopardy. In *McKenzie*, the supreme court held that inmate segregation and loss of good time credit for violent conduct served remedial goals of institutional order and safety, "remedial goals, intended to prevent further disruption of prison security * * *." *McKenzie*, 542 N.W.2d at 620. The supreme court then recognized that, in a "rare case," a disproportionately severe sanction for a minor violation of prison rules could trigger double jeopardy. *Id.* at 621. The court concluded that 300 days in segregation and a proportionate loss of good time credit did not constitute such a rare case, because the sanction was "not overwhelmingly punitive con-

sidering the seriousness of McKenzie's misconduct." *Id.*

We now turn to the purpose that school suspension serves. The Pupil Fair Dismissal Act (the Act) governs a school's dismissal of a student. *See* Minn.Stat. § 127.29, subd. 1 (1994) (restricting school's dismissal of pupils). The Act

> vests[s] school districts with the authority necessary to control and manage discipline in the school so as to "protect the rights of pupils who are not misbehaving and to protect school property."

Op. Att'y Gen. 169–f (Aug. 14, 1986) (quoting Op. Att'y Gen. 169–f (Sept. 3, 1985)). The Act allows a school to dismiss a pupil on three grounds: (1) "Willful violation of any reasonable school board regulation," (2) "[w]illful conduct which materially and substantially disrupts the rights of others to an education," and (3) "[w]illful conduct which endangers the pupil or other pupils, or the property of the school." Minn.Stat. § 127.29, subd. 2. Each of these grounds serves a remedial goal. Accordingly, we conclude that a student's suspension that falls within these statutory grounds serves remedial goals of safety, institutional order, and protection of the rights of other students to an education. *Cf. McKenzie*, 542 N.W.2d at 620 (prison discipline, designed to establish institutional order and to protect safety of staff and inmates, serves remedial goals).

Here, E.R.D. violated a school district policy that expressly allows the school to suspend a pupil for

> conduct which disrupts the climate of the school or potential to disrupt the rights of others, i.e. * * * possession of knives or guns * * *.

School District 742 Policies §§ 1.F and 2.F. This policy clearly states an appropriate remedial goal, consistent with those goals enumerated in the Act, as a basis for suspension of E.R.D. The school district policies, a copy of which is contained in the school's handbook, further enumerate remedial goals for discipline that are consistent with the Act:

> The School District, while respecting the rights and dignity of its students and staff, will take necessary steps to ensure that a safe, positive, and orderly learning envi-

ronment is maintained for all students.
\* \* \*

The school board and staff expect reasonable and appropriate student behavior in order to provide a proper educational climate for all students. Any student violating proper and reasonable behavior expectations that disrupt the educational rights of others and/or self, endanger School District employees, other peoples, the property of the school, the rules and regulations stated in the student handbook, or the specific regulations below, shall be disciplined in accordance with this policy.

E.R.D. argues that the suspension here is solely punishment, because remedial goals of safety and order were satisfied when school staff seized the knife from E.R.D.'s coat pocket. He also contends that the fact he was afforded an informal conference before suspension demonstrates that he posed no immediate danger to others at school. *See* Minn.Stat. § 127.30 (requiring formal administrative conference with pupil before suspension unless "it appears that the pupil will create an immediate and substantial danger to self or to surrounding persons or property"). We disagree.

E.R.D. views too narrowly the issue of remedial disciplinary actions in a school setting. The mere disarming of E.R.D. does not fully ensure school safety and does little, if anything, to advance institutional order. As the Kansas Supreme Court recently stated in a case involving possession of a weapon on school property:

> We have explained the vital remedial role expulsion may serve in maintaining institutional order within a public school:
> "Boards of education are given an important role in the training and education of our children. The high school education mission requires that hundreds of immature, volatile and aggressive adolescents be brought together in confined quarters. Most of these youth are seeking their own identity as well as an education. If a suitable atmosphere for instruction, study and concentration is to be provided, the students and the teachers must be subjected to a wide variety of disciplinary rules. For many adolescents learning is a discipline rather than a pleasure and it must be carried on in dignified and orderly surroundings if it is to be practiced satisfactorily."

*In re C.M.J.*, 259 Kan. 854, 915 P.2d 62, 68 (1996) (quoting *Blaine v. Board of Educ.*, 210 Kan. 560, 502 P.2d 693, 701 (1972)).

Other states have applied the *Halper* test in the context of school disciplinary proceedings and have unanimously held that no double jeopardy violation occurred. *C.M.J.*, 915 P.2d at 69 (expulsion of student who had loaded gun in his car located on school property served remedial purpose of ensuring safety and effective administration of school order and discipline); *Clark v. State*, 220 Ga.App. 251, 469 S.E.2d 250, 252 (1996) (10–day suspension of student for armed robbery of convenience store served remedial purpose of providing for safety and welfare of students by preventing student who confessed to violent crime from returning to school if released from jail); *In re Gila County Juvenile Delinquency Action Nos. DEL 6280, DEL 6281, & DEL 6282*, 169 Ariz. 53, 816 P.2d 950, 951 (App.1991) ("While the school board's action in expelling a student from school clearly has a punitive effect on the individual student, we believe its primary purpose and function is to protect the other students and the faculty and to preserve the integrity and continuity of the educational process"); *see also In re Dandridge*, 614 So.2d 129, 131 (La.App.1993) ("administrative proceeding resulting in expulsion does not constitute a criminal prosecution and trigger double jeopardy protection"), *writ denied*, 616 So.2d 684 (La.1993). We find no authority holding that a school discipline bars subsequent juvenile prosecution for the same conduct.

We recognize that the sanction of suspension imposed on E.R.D. undoubtedly carries the "sting of punishment." It also has a deterrent effect. But because the suspension also serves remedial goals enumerated in the Pupil Fair Dismissal Act, as implemented by the school district in which E.R.D. lives, the suspension may "fairly be characterized as remedial" and passes that test set forth in *Halper* and applied to disciplinary sanctions in *McKenzie*, 542 N.W.2d at 619 (quoting

*Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1901–02). The suspension here, for the maximum time allowed by statute, is certainly not "overwhelmingly disproportionate" to E.R.D.'s conduct—taking a knife onto school property in violation of a criminal statute—so as to constitute the "rare case" in which a civil sanction is deemed "punishment" for purposes of double jeopardy. *Id.* at 621 (quoting *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902).

## DECISION

The trial court did not err when it denied E.R.D.'s motion to dismiss the juvenile petition on double jeopardy grounds. Double jeopardy does not bar E.R.D.'s delinquency adjudication.

**Affirmed.**